# ⊞ NEWS AMERICA INCORPORATED

1211 Avenue of the Americas, New York, NY 10036
212/852-7033   Fax 212/852-7214
email: mcameron@newscorp.com

Michael G. Cameron
Assistant General Counsel of NAI

*Docket and File.*

January 24, 2013

The Honorable Paul G. Gardephe
United States District Court
500 Pearl St.
New York, NY 10007-1312

RE: *United States v. Valle*
Case No. 12 Cr. 847

Dear Judge Gardephe:

The legal department of News America Incorporated acts as the in-house legal counsel for NYP Holdings, Inc., publisher of the New York Post newspaper (the "Post"). On behalf of the Post and its reporter, Bruce Golding, we respectfully request access to the following items that have been submitted to the court in the aforementioned matter:

- Images that were attached to the jury questionnaire proposed by the defense in the document titled "Defendant Gilberto Valle's Proposal for the Examination of Prospective Jurors", filed with court on January 14, 2013 (see paragraph 75: "…You will likely see images from these websites like the types of images which are attached at the end of this questionnaire…").

- A supplemental written summary of the proposed expert testimony of Dr. Park Diez, which is referenced in footnote 1 on page 1 of the document titled "Defendant Gilberto Valle's Memorandum of Law in Opposition to the Government's Motion *In Limine* to Preclude the Testimony of Defense Expert Witness Park Dietz", filed with the court on January 14, 2013.

We respectfully submit that both the images and the supplemental written summary are both subject to the public's constitutional right of access. They must therefore be made available to Mr. Golding for public

inspection absent findings that sealing is essential to protect some overriding interest, and even then any sealing order must be narrowly tailored in scope and in time.

The First Amendment conveys an affirmative, enforceable right of public access to criminal proceedings, including pre-trial proceedings. See, for example, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580-81 (1980); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"); *Press-Enterprise Co. Superior Court*, 478 U.S. 1, 13-14 (1986) ("*Press-Enterprise II*"). The Second Circuit already has held that this right extends specifically to motion papers relating to proceedings that are themselves open, *In re New York Times Co. (Biaggi)*, 828 F.2d 110, 114-16 (2d Cir. 1987).

The First Amendment right of access exists to protect the public's access to "information about the operation of their government." *Richmond Newspapers*, 448 U.S. at 584 (Stevens, J.,concurring). As Chief Justice Burger said in *Richmond Newspapers*: "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." 448 U.S. at 572.

Access to judicial records protects "the citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 597-598 (1978). The right of access to such records ensures that courts "have a measure of accountability" and promotes "confidence in the administration of justice" – goals that cannot be accomplished without access to documents "used in the performance of Article III functions." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995); see also, *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) (the ability to monitor judicial records "deters arbitrary judicial behavior" and gives public confidence in the "conscientiousness, reasonableness, and honesty of judicial proceedings"); accord *United States v. Hubbard*, 650 F.2d 293, 314-15 (D.C. Cir. 1981). As Justice Blackman observed: "Public confidence cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, *with the record supporting the court's decision sealed from public view*." (Emphasis added) *Gannett Co. v. DePasquale*, 443 U.S. 368, 429 (1979) (Blackmun, J., concurring in part and dissenting in part) (citation omitted).

A party seeking to deny public access to court records must bear the burden of establish a compelling need for secrecy and demonstrate that any restriction on access ∤ narrowly drawn. See *Press-Enterprise I*, 464 U.S. at 510; *Press-Enterprise II*, 478 U.S. at 13-14; *Lugosch*, 435 F.3d at 123-24. While different verbal formulations have been used by various courts to define the showing that must be made, any party seeking to limit the First Amendment right of access to court records must demonstrate four things:

1. The existence of a substantial probability of prejudice to a compelling interest. One seeking to seal court records must demonstrate a substantial probability that public access is likely to harm a compelling governmental interest. See, for example, *Richmond Newspapers*, 448 U.S. at 580-871; *Press-Enterprise I*, 464 U.S. at 510; *Press-Enterprise II*, 478 U.S. at 13-14; *ABC v. Stewart*, 360 F.3d 90, 100-103 (2d Cir. 2004).

2. The absence of any alternatives to sealing that will adequately protect the threatened interest. Those seeking to conceal court records must further demonstrate that no alternative to secrecy can

adequately protect the threatened interest. As the Second Circuit has explained, a "trial judge must consider alternatives and reach a reasoned conclusion that closure is a preferable course to follow to safeguard the interests at issue." *In re The Herald Company*, 734 F.2d 93, 100 (2d Cir. 1984); see also, for example, *Press-Enterprise II*, 478 U.S. at 13-14; *United States v. Brooklier*, 685 F.2d 1162, 1167 (9th Cir. 1982).

3. The proposed restriction on access is narrowly tailored, to limit secrecy in time and scope. Any sealing imposed must be no broader than necessary to protect the threatened interest. See, for example, *Richmond Newspapers*, 448 U.S. at 581. If a more narrowly tailored means of protecting the interest exists, such as making records available in redacted form, it must be used. See *Press-Enterprise I*, 464 U.S. at 510.

4. The restriction on access will meaningfully protect the threatened interest. Because constitutional rights may not be infringed for an idle purpose, any order limiting access must be effective in protecting the threatened interest for which closure is imposed. See *Press-Enterprise II*, 478 U.S. at 14 (party seeking secrecy must demonstrate "that closure would prevent" harm sought to be avoided).

We respectfully submit that there is no compelling need for secrecy that would deny the Post access to the documents listed above. Accordingly, we request that Mr. Golding is granted immediate access to these documents.

Respectfully submitted,

Michael Cameron