UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       -against-

GILBERTO VALLE,

               Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/2/13

**MEMORANDUM
OPINION & ORDER**

12 Cr. 847 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Defendant Gilberto Valle is charged with conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c), and accessing a federal database without authorization, in violation of 18 U.S.C. § 1030(a)(2)(B).  (Indictment (Dkt. No. 9))  The Government has moved in limine (Dkt. Nos. 39, 46) for an order excluding proposed expert testimony from James W. Herriot and Park Dietz.  For the reasons stated below, the Government's motions will be denied.

## BACKGROUND

**I.    NATURE OF CHARGES AND EXPECTED DEFENSE**

      The Government contends that through emails and internet "chats" the Defendant conspired with three others to kidnap eight women.  (Indictment (Dkt. No. 9); Jan. 11, 2013 Waxman Ltr.)  The Government represents that in these electronic communications the Defendant and his alleged co-conspirators "discuss, in graphic detail, plans to kidnap, torture, kill and cannibalize specific and identified women."  (Jan. 29, 2013 Waxman Ltr. at 1)  The few electronic communications that have been disclosed to the Court discuss acts of extreme violence, generally in a sexual context.  See, e.g., id.  It appears that the "chats" the Government intends to introduce at trial occurred over sexual

fetish websites that cater to individuals interested in violent sexual fantasy, sado-masochism, and bondage, as well as topics such as rape, genital mutilation, dismemberment, and cannibalism. (Jan. 28, 2013 Tr. 15; Dec. 12, 2012 Gatto Decl. (United States v. Valle, 12 Cr.-4711 (2d Cir.) (Dkt. No. 10-1) at ¶ 20) The Government may introduce at trial images and videos that the Defendant downloaded to his computer showing acts of violence, including staged torture and staged videos of women being hunted in the woods. (Jan. 28, 2013 Tr. 7, 9)

    The defense at trial will be that the Defendant had no criminal intent, and that his "chats" over the internet reflect nothing more than sexual fantasies.[1] Defendant intends to assert that he suffers from a psychological condition known as "paraphilia." (Jan. 7, 2013 Gatto Ltr. (Dkt. No. 33) at 4-5) This condition allegedly causes the Defendant to "derive[] sexual excitement from the imagined psychological or physical suffering [of women] (including the abduction and binding) of . . . female 'victim[s].'"

    Defense counsel intends to call (1) James W. Herriot to testify about the sub-culture prevalent on the sexual fetish websites frequented by the Defendant; and (2) Dr. Park Dietz to testify about the Defendant's psychological condition. The

---

[1] See, e.g., Nov. 20, 2012 Tr. at 5-6, 10 ("The government has evidence that [Valle] participated in a fantasy world on the Internet where he talked with other men on the Internet about their sexual fantasies. And that's it, your Honor. It's nothing more than that. They have absolutely nothing that takes my client's conduct outside of the fantastical unreal work of the Internet into his everyday life. . . . The only thing that happened here are men talking about fantasies. . . . Again – and I've said it now a billon times – the government's case is nothing more than a hard drive full of disturbing, sexually-deviant talk, between my client and other men who share in his, albeit weird, proclivities. But thoughts in this guy's mind or someone else's mind are not a crime."); Dec. 12, 2012 Gatto Decl. (United States v. Valle, 12 Cr.-4711 (2d Cir.) (Dkt. No. 10-1) at ¶ 19) ("Although the chats are deeply disturbing to people uninitiated to the world of sexual fantasy that exists on the internet, Mr. Valle's alleged conversations on the internet appear to be typical of the communications engaged in by people who frequent websites devoted to dark sexual fetishes.").

Government seeks an order precluding the testimony of both proposed expert witnesses. (Dkt. Nos. 39 and 46)

## II. PROPOSED TESTIMONY FROM JAMES W. HERRIOT

In a January 12, 2013 letter, defense counsel notified the Government of her intention to call James W. Herriot as an expert witness. (Jan. 12, 2013 Gatto Ltr. (Dkt. No 46-1) at 2) Defense counsel summarized Herriot's background as follows:

> Dr. Herriot is an expert on sexual communications and behavior on the internet. He has an extensive background in computer sciences, with 30 years of experience as an internet professional. He is also learned in issues relating to human sexuality. Dr. Herriot is a Professor of Clinical Sexuality at the Institute for the Advanced Study of Human Sexuality in San Francisco and a certified clinical sexologist. Combining his two fields, he wrote his Ph.D. thesis on sexual communication on the internet and has conducted additional research, given lectures, and testified on the subject matter of sexual behaviors on the internet. As part of his research Dr. Herriot has conducted a large number of interviews and studied internet communications initiated in websites devoted to various sexual interests, including sexual deviancies and fetishes. Dr. Herriot has testified previously as an expert on the subject of sexual communications on the internet in federal, state, and military courts.

(Id. at 1) Dr. Herriot has a B.S. in computer science from Stanford University and a Ph.D. in human sexuality from the Institute for the Advance Study of Human Sexuality. (Id., Ex. A)

Defense counsel summarized Herriot's expected testimony as follows:

> Dr. Herriot will explain to the jury how the internet works and how people communicate and socialize on the internet via social media websites, like Facebook, "fetish" websites, like darkfetishnet.com, and emails, and instant messages.
>
> Dr. Herriot will testify about a distinct culture which exists on the internet in sexual "fetish" and similar websites. People who participate in this internet subculture often adopt the personas of a fantasy character in their online communications with others. Dr. Herriot will explain that many people who engage in internet communications, especially those who engage in conversations initiated through sexually explicit websites, alter their real personas (i.e., they act

3

or lie) with regard to identity, age, gender, physical appearance, station in life, profession, and other matters.  Typically, these people weave a bit of truth about themselves into the communications with a great deal of imagination and exaggeration.  In their "roles," people engage in communications with a great deal of imagination and exaggeration.  In their "roles," people engage in communications in which they "play" out scenarios and encourage the individuals with whom they are communicating to do the same and build on or add to the scenario.  In this way, much of online communications initiated through sexually explicit websites resemble improvisational theatre, but the "improvisational" acting is played out in an online interactive textual format and environment.  As in improvisational theatre, internet role playing is intended to allow its participants to express their imaginations freely, wherever the "scene" may lead.  The style is to maintain the repartee, regardless of how implausible, ridiculous, or even impossible the conversation gets.  Relatedly, Dr. Herriot will also testify regarding the entertainment value of internet fantasy role play for those who engage in it and will discuss the entertainment value of the horror movie-like imagery used in internet communications initiated through dark "fetish" websites.

Dr. Herriot will also explain why the unique attributes of the internet, generally, and of sexually explicit websites, specifically, encourage people to engage in fantastical role play and chat about matters which they otherwise would not discuss in face-to-face conversations.  The anonymity and lack of verification of the internet encourages imaginative play acting.

Dr. Herriot will testify to cues that indicate whether internet communications are consistent with the participants engaging in fantasy role play. Those cues include whether the participants used screen names in their communications, the nature of the public profiles created by the participants and viewed by the other participants, the nature of the website in which the participants met, whether the chats appear to compress time in an unrealistic manner, whether the subject matter of the chats is implausible and provocative, the tempo of the chats, whether the participants are consistent with factual details provided, and the manner by which the chats conclude.

(Id. at 2)

### III.    PROPOSED TESTIMONY FROM PARK DIETZ

####    A.    Qualifications

In a January 7, 2013 letter, defense counsel gave notice that the defense intended to offer expert testimony from Park Dietz, a forensic psychiatrist and criminologist.  (Jan. 7, 2013 Gatto Ltr. (Dkt. No. 33))

4

Dietz has an M.D., a master's degree in public health, and a Ph.D. in sociology from Johns Hopkins.  (Park Dietz Curriculum Vitae ("Dietz C.V.") (Dkt. No. 33-1) at 2)  Dr. Dietz did a psychiatric residency at Johns Hopkins Hospital and served as Chief Fellow in Forensic Psychiatry at the University of Pennsylvania. (Id.)  Dr. Dietz has also held academic appointments in psychiatry and behavioral sciences at Johns Hopkins, Penn, Harvard, and Virginia.  (Id. at 2-3)  Dr. Dietz is currently Clinical Professor of Psychiatry and Biobehavioral Science at the UCLA School of Medicine. (Id. at 1)  Since 1996, Dr. Dietz has operated a forensic litigation consulting firm.  (Id. at 1)

Dr. Dietz is a past president of the American Academy of Psychiatry and the Law, a life fellow of the American Psychiatric Association, and a fellow of the American Academy of Forensic Sciences.  (Id. at 7-9)  He is a forensic psychiatrist for both the FBI's National Center for the Analysis of Violent Crime and the New York State Police Forensic Sciences Unit.  (Id. at 1)  He has had editorial responsibilities for numerous medical journals focused on psychiatry, forensic science, and the behavioral sciences.  (Id. at 6-10)

As a fellow of the American Psychiatric Association, Dr. Dietz has served as an adviser for the sexual disorders section of the DSM-IV, and on the advisory committee concerning paraphilia – the condition Dr. Dietz believes that the Defendant suffers from.  (Id. at 8; Jan. 14, 2013 Gatto Ltr. (Dkt. No. 66) at 6-8 )  Dr. Dietz has authored more than 100 articles and book chapters, and has lectured on, topics such as forensic psychiatry, paraphilia, sexual sadism and bondage, pornography, sex offenses,

5

sex offender profiles, predicting individual criminality, and stalking. (Dietz C.V. at 30-60)

Dr. Dietz has provided expert testimony and/or consultant services in many high profile criminal cases, including those involving John W. Hinckley Jr., Jeffrey Dahmer, Susan Smith, Robert Chambers, Theodore Kaczynski, the Washington, D.C. snipers; and most recently, Jared Loughner. (Id. at 11-18) Many of the cases in which Dr. Dietz has consulted involved violent sexual crimes. (Id.) Dr. Dietz has generally been retained by prosecutors' offices. (Id.)

### B.     Opinions

Defense counsel states that

> Dr. Dietz will testify as an expert in the area of forensic psychiatry and criminology, and, more particularly, as an expert in sexual fantasy, extreme or bizarre sexual role play, sexual sadism, sadomasochism and BDSM subculture, and the extent to which persons involved in such alternative sexual lifestyles carry out their fantasies or role playing. . . .
>
> Dr. Dietz's anticipated testimony embraces three components: (1) educational testimony without reference to the defendant or the charges against him, (2) testimony about his examination of the defendant, interviews of his family and friends (to the extent possible), and review of evidence in this matter, and (3) response to hypothetical questions posed by defense counsel.

(Gatto Jan. 14, 2013 Ltr (Dkt. No. 66) at 1-2)

Dr. Dietz's "educational testimony" will address "the history of knowledge of deviant sexual fantasies and behavior." Dr. Dietz contends that "leading psychiatric authorities have recognized for over 125 years that many men who have sexually sadistic fantasies or who create or seek out sexually sadistic pornography engage in no harmful actions toward others." (Id. at 2) Dr. Dietz will testify that "men who find themselves sexually aroused to sadistic images" develop coping mechanisms, including

6

"role-playing" over the internet. (Id. at 3) Dr. Dietz will further "describe the risk factors and protective factors for sadistic criminal offending among men who are sexually aroused to sadistic fantasies. (Id. at 4-6)

As to the Defendant, Dr. Dietz is

> expected to testify that Mr. Valle does not suffer from any major mental illness, psychotic illness, or personality disorder associated with violence or criminality . . . . Dr. Dietz will explain, however, that Mr. Valle does meet the diagnostic criteria for Paraphilia, as specified in the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (American Psychiatric Association 1994). Dr. Dietz will discuss the history of scientific understanding of Paraphilia, and will testify that the essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) non-consenting persons, that occur over a period of at least six months. . . .
>
> Dr. Dietz will opine that Mr. Valle's particular Paraphilia involves recurrent fantasies of sexual sadism in which he derives sexual excitement from the imagined psychological suffering (including the abducting and binding) of a female "victim." Dr. Dietz will further testify that Mr. Valle's internet communications and related actions in this case are consistent with the modus operandi of fantasy role-play and storytelling engaged in by people who have a Paraphilia.

(Jan. 7, 2013 Gatto Ltr. (Dkt. No. 33) at 3-5) Dr. Dietz will further testify that Valle "lacks any of the risk factors for violence. . . with the exception of some bouts of intoxication . . . and various psychosocial stressors." (Jan. 14, 2013 Gatto Ltr. (Dkt. No. 66) at 8)

Finally, Dr. Dietz will respond to "hypothetical questions designed to elicit his opinion that Mr. Valle's short stories, chats, and e-mails are all examples of extreme sexually sadistic fantasy material," that "Valle's internet communications are consistent with sadistic online role play and the exchange of erotic fantasies," and that the

7

response of those Valle corresponded with over the internet "brought him a sense of acceptance and normalcy." (Id. at 8-9)

## DISCUSSION

### I.   RULES GOVERNING EXPERT TESTIMONY AND DISCLOSURE

Fed. R. Evid. 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Fed. R. Evid. 704(b) states that

> [i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b).

Fed. R. Crim. P. 16(b)(1)(C) provides that "[t]he defendant must, at the government's request, give to the government a written summary of any [expert] testimony that the defendant intends to use . . . as evidence at trial." Fed. R. Crim. P. 16(b)(1)(C). "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Id. Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions. United States v. Duvall, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics."); United

8

States v. Mahaffy, No. 05-CR613(S-3)(ILG), 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007) (same).  "As the Advisory Committee notes to Rule 16 explain, the disclosure requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."  United States v. Ferguson, 3:06CR137(CFD), 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007) (citation omitted).  If a defendant fails to provide disclosures in accordance with Rule 16(b)(1)(C), the district court may exclude the expert's testimony at trial.  Mahaffy, 2007 WL 1213738, at *2.

## II. ANALYSIS

### A. HERRIOT

The Government argues that Dr. Herriot's testimony should be precluded because (1) Defendant did not provide adequate notice under Rule 16(b)(1)(C); (2) Herriot's proposed testimony would not be helpful to the jury; and (3) Herriot's testimony would be cumulative of Dr. Dietz's testimony.  (Gov't. Herriot MIL Br. (Dkt. No. 46))

#### 1. Notice

As to sufficiency of notice, the Government argues that the "expert notice provided by the defendant leaves unclear what conclusions Dr. Herriot will offer at trial." (Id. at 4)  In particular, the Government complains that the discussion of Dr. Herriot's expected testimony regarding the "cues" that indicate whether internet communications are consistent with fantasy role play is unclear.  According to the Government, Dr. Herriot does not explain "what the[] supposed cues are, or the nature of the research that

9

is the basis for [his] opinion that such cues exist." (Id.) The Government further complains that the summary of Dr. Herriot's proposed testimony does not offer any explanation regarding the nature of the "distinct culture" that he claims exists on the internet in sexual "fetish" and similar websites. (Id.)

The Government's arguments concerning Dr. Herriot's expected testimony regarding the culture that exists in sexual fetish websites are not persuasive. This subject is discussed in detail in defense counsel's notice letter concerning Dr. Herriot. (Jan. 12, 2013 Gatto Ltr. (Dkt. No. 46-1) at 2))

As to several of the "cues" cited by Dr. Herriot, however, the Court agrees that it is not clear from Defendant's summary what the nature of these "cues" is. Defendant will provide additional disclosure concerning the significance of (1) screen names; (2) public profiles; (3) the websites on which chats occur; and (4) "the manner by which the chats conclude" to the opinions that Dr. Herriot will render.

Defendant will also supplement his disclosure as to the basis for Dr. Herriot's opinions. The statement that Dr. Herriot has conducted "a large number of interviews and studied internet communications initiated in websites devoted to various sexual interests, including sexual deviancies and fetishes" (see id. at 1) is not sufficient to demonstrate that Dr. Herriot's opinions are based on "sufficient facts or data" or that his testimony is "the product of reliable principles and methods." See Fed. R. Evid. 702.

Defendant will provide the supplemental disclosure by 5:00 p.m. on Feb. 5, 2013.

### 2. <u>Helpfulness</u>

The Government contends that Defendant has not demonstrated that Dr. Herriot has "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue.'"  (Govt. Herriot MIL Br. (Dkt. No. 46) at 6 (citing Fed. R. Evid. 702))

The Second Circuit addressed proposed expert testimony from Dr. Herriot in <u>United States v. Joseph</u>, 542 F.3d 13 (2d Cir. 2008).  In <u>Joseph</u>, a jury convicted the defendant of "using his computer to send messages on the Internet to entice an individual he believed to be an underage girl to engage in unlawful criminal sexual activity, in violation of 18 U.S.C. § 2422(b)."  <u>Joseph</u>, 542 F.3d at 14.  The Court of Appeals vacated the conviction based on an erroneous jury instruction.  <u>Id.</u> at 19.  In <u>dicta</u>, however, the court suggested that the district court might have erred in excluding Dr. Herriot's proposed expert testimony.  <u>Id.</u> at 21.

At trial, the defendant argued that Dr. Herriot "should be permitted to testify about role-playing in the context of sexually explicit conversations on the Internet."  <u>Id.</u>  The defendant proffered that Dr. Herriot would "testify about a distinct culture of the Internet in which one can become a 'fantasy character[].'  He would also explain the realities and motivations of online role-playing via chatrooms and emails."  <u>Id.</u>  Defense counsel further represented that Dr. Herriot would

> testify that . . . [a] major component of the entertainment on the Internet is the rapid repartee, in addition to having imaginative fun.  When engaging in Internet role-play, people love to experiment with their personas.  Typically, people weave a bit of truth about themselves with a great deal of imagination and/or exaggeration.  The Internet presents [a] competitive entertainment. . . . Sexually explicit conversations tend to drive the chatting relationship, and are fueled by the anonymity of the created personas. . . .

11

Id. at 22.          "The District Court sustained the Government's objection to Dr. Herriot's testimony, primarily on grounds of relevance."  Id. at 21.  The Second Circuit "urge[d] the District Court to give a more thorough consideration to the defendant's claim to present Dr. Herriot's testimony, in the event it is offered at retrial."  Id.

The court stated that "Dr. Herriot's field of study and experience qualified him to offer relevant testimony," and that his "opinions appear to be highly likely to assist the jury 'to understand the evidence.'"  Id. at 22  The Court further noted that "although some jurors may have familiarity with Internet messaging, it is unlikely that the average juror is familiar with the role-playing activity that Dr. Herriot was prepared to explain in the specific context of sexually oriented conversations in cyberspace."  Id. at 21-22.

Much of the reasoning in Joseph is directly applicable here.  As in Joseph, the Court has no reason to believe that "the average juror is familiar with the role-playing activity that Dr. Herriot [is] prepared to explain in the specific context of sexually oriented conversations in cyberspace."  Id.  The Court likewise has no reason to believe that the "average juror" will be familiar with the sexual fetish websites on which the Defendant encountered his alleged co-conspirators.  Accordingly, the Court concludes that Dr. Herriot's proposed testimony would be both relevant and helpful to jurors in this case.

### 3. **Cumulativeness**

Finally, the Government argues that Dr. Herriot's testimony would be cumulative of Dr. Dietz's testimony.  (Gov't. Herriot MIL Br. (Dkt. No. 46) at 1) "Evidence is cumulative when it replicates other admitted evidence."  United States v.

12

Jamil, 707 F.2d 638, 643 (2d Cir 1983) (citing Hamling v. United States, 418 U.S. 87, 127 (1974).

The Court sees little risk that Dr. Herriot's testimony will be cumulative of Dr. Dietz's testimony. The Court expects that Dr. Dietz will focus on (1) the medical evidence as to whether men who have sexually sadistic fantasies generally act on those fantasies; (2) the psychiatric condition that he claims Valle suffers from – Paraphilia – the coping strategies Valle has developed to deal with his condition, and whether Valle has risk factors suggesting that he is prone to violence; and (3) whether Valle's internet emails and chats are consistent with the type of online role play Dr. Dietz has seen other individuals with Paraphilia engage in.

The Court does not expect Dr. Herriot to address the psychiatric literature or Valle specifically. Instead, Dr. Herriot's testimony will focus on the culture that allegedly exists on sexual fetish websites, including role play and other behaviors that he contends are characteristic of these websites.

To the extent that the testimony of either of these witnesses becomes cumulative at trial, the Court will address the issue at that time. See Jamil, 707 F.2d at 643 ("At this stage of the litigation, when the trial has not yet commenced and no evidence has yet been put before a jury, it is premature to conclude that this evidence is cumulative.").

The Government's motion in limine concerning Dr. Herriot will be denied.

B. **DIETZ**

The Government has withdrawn its notice objection concerning Dr. Dietz (see Gov't. MIL Reply at 1), but contends that his testimony should be precluded because

13

(1) it will not be helpful to the jury under Fed. R. Evid. 702; and (2) will address the "ultimate issue" in this case, in violation of Fed. R. Evid. 704(b).  (Gov't. Dietz MIL Br. (Dkt. No. 39) at 1)

The Court concludes that Dr. Dietz's proposed testimony is both relevant under Fed. R. Evid. 401, and likely to be helpful to the jury under Fed. R. Evid. 702.  Dr. Dietz will address a number of subjects that are highly relevant to this case, including the likelihood of violent conduct by men who are sexually aroused by sexually sadistic images; the coping mechanisms such men often develop, including role play over the internet; and the psychological condition that Valle allegedly suffers from, and how that condition has manifested itself in his actions.  All of these topics are beyond the ken of the average juror, and Dr. Dietz is well situated by his education, training, research, and academic study and writings to address these issues.

In arguing that Dr. Dietz's testimony will not be helpful to the jury, the Government relies primarily on United States v. DiDomenico, 985 F.2d 1159 (2d Cir. 1993), where the Second Circuit affirmed the district court's exclusion of expert testimony regarding defendant's supposed "dependent personality disorder." Id. at 1163-64.  In excluding the proposed expert testimony as unnecessary and not helpful to the jury, then District Judge Cabranes noted that it was offered to show the defendant's "asserted vulnerability and susceptibility to being duped by her boyfriend.  Expert testimony on this relatively commonplace experience is simply inappropriate." Id. at 1161-1162.  The Second Circuit agreed, finding that the defendant's claim that she acted under the influence of her boyfriend "was not hard to assimilate and . . . addressed a subject matter within the experience of the jury." Id. at 1163.

The proffered expert testimony here is of an entirely different nature. Dr. Dietz will not be addressing any matters that can fairly be described as "commonplace experience[s]." The subject matter at issue is likely to be entirely foreign to the jury, and Dr. Dietz's testimony is likely to be helpful to the jury in assessing Valle's state of mind.

The Government also contends that Dr. Dietz's proposed testimony should be excluded as violative of Fed. R. Evid. 704(b). (Gov't. Dietz MIL Br. (Dkt. No. 39) at 7) As noted above, Rule 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704(b).

Defendant argues that Dr. Dietz's testimony will not violate Rule 704(b), because "[h]e will not state an opinion about whether Mr. Valle did or did not have the criminal intent to conspire or kidnap. He will not even opine about whether Mr. Valle had the capacity to form criminal intent." (Valle Dietz Opp. (Dkt. No. 49) at 13) (emphasis in original).

Instead, Defendant argues, Dr. Dietz will offer testimony designed to assist the jury in understanding Valle's highly unusual psychiatric condition, which causes him to experience sexual arousal from discussing, or viewing scenes of, imagined psychological or physical suffering of women, particularly in a sexual context. Dr. Dietz will further testify that "Mr. Valle's internet communications and related actions in this case are consistent with the modus operandi of fantasy role-play and storytelling engaged in by people who have Paraphilia." (Jan. 7, 2013 Gatto Ltr. (Dkt. No. 33) at 4-5) None of this proposed testimony addresses the ultimate issue of criminal intent, however, nor

15

does it improperly usurp the jury's role. The jury could accept Dr. Dietz's testimony in toto and still conclude that Valle had criminal intent – i.e., that he agreed with another individual to kidnap a female victim.

The cases cited by the Government are not to the contrary, because they involve proposed expert testimony indicating that the defendant lacked the mental capacity to commit the charged offense, or had a belief system that prevented the defendant from forming the requisite intent for the charged crime.

In DiDomenico, 985 F.2d 1159 (2d Cir. 1993), discussed above, the defendant was charged with wire fraud and interstate transportation of stolen property. The Government alleged that the defendant had assisted her boyfriend in selling stolen computer equipment. DiDomenico, 985 F.2d at 1160-61. The defendant proffered a psychiatrist's opinion that she suffered from "dependent personality disorder with narcissistic features." Id. at 1161. The Government moved in limine to preclude this evidence. Id.

At a hearing on the motion, DiDomenico's counsel argued that the proposed testimony "would assist the jury to determine DiDomenico's state of mind during the relevant time period," but denied that the psychiatrist "would testify on the ultimate issue of whether DiDomenico knew that the computer equipment was stolen."[2] Id. The district court excluded the proffered expert testimony and the Second Circuit affirmed. As discussed above, both the district court and the Second Circuit concluded that the psychiatrist's proposed testimony addressed a subject within a juror's

---

[2] In an earlier case, the Second Circuit had ruled that "a district court may exclude psychiatric evidence of a 'passive-dependent personality disorder' offered to show lack of knowledge that certain property was stolen." DiDomenico, 985 F.2d at 1164 (citing United States v. Bright, 517 F.2d 584, 585-86 (2d Cir. 1975)).

16

"commonplace experience," and that "the imprimatur of a clinical label was neither necessary nor helpful for the jury to make an assessment of DiDomenico's state of mind." Id. at 1162-63.

The court concluded that the psychiatrist's proposed testimony was also properly excluded under Rule 704(b), however, because it amounted to an opinion about whether the defendant had the mental capacity to commit the crime:

> While DiDomenico proclaims that she did not offer [the psychiatrist] to testify as to the ultimate issue of whether she knew the computer equipment was stolen, this is semantic camouflage. We read [the psychiatrist's] proffered testimony as stating the bottom-line inference, and leaving it to the jury merely to murmur, "Amen." In any event, it was certainly close enough to a violation of Rule 704(b) that, when combined with the trial judge's assessment of helpfulness under Rule 702, amply justified his exercise of discretion to exclude it.

Id. at 1165.

The nature of Dr. Dietz's proposed testimony is entirely different. While evidence of "passive-dependent personality disorder" was offered in DiDomenico and Bright to demonstrate that defendants lacked the mental capacity to accept that the property at issue was stolen – see Bright, 517 F.2d at 586 ("Appellant argues that the proffered psychiatric testimony should have been admitted for the purpose of showing her inability to know that the checks had been stolen") – Dr. Dietz will not opine as to Valle's mental capacity or whether he had criminal intent. The possibility that the jury may infer from Dr. Dietz's testimony that Valle did not intend to kidnap anyone – and that his chats were mere sexual fantasy – does not require exclusion of Dr. Dietz's testimony, of course. See DiDomenico, 985 F.2d at 1165 ("Clearly, Rule 704(b) does not prohibit all expert testimony that gives rise to an inference concerning a defendant's mental state.") (citing United States v. Richard, 969 F.2d 849, 854-55 (10th Cir. 1992)

17

("[Rule 704(b)] does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state."); see also United States v. Dunn, 846 F.2d 761, 762 (D.C. Cir. 1988) ("It is only as to the last step in the inferential process – a conclusion as to the defendant's actual mental state – that Rule 704(b) commands the expert to be silent.")

United States v. Dupre, 462 F.3d 131 (2006) is also inapposite.  In Dupre, a wire fraud case, the Second Circuit affirmed the district court's exclusion of a psychologist's opinion that the defendant's

> intense, pervasive religious beliefs significantly interfere with her ability to see her involvement in the "investment project" in a realistic manner and significantly contribute to her ongoing conviction that she has been involved in a legitimate enterprise with benevolent intentions.

Dupre, 462 F.3d at 138.  The court ruled that the proffered opinion was properly excluded under Fed. R. Evid. 403, and also commented that "the proffered evidence might have constituted an impermissible opinion about the 'ultimate issue' of whether Dupre possessed the mental state constituting an element of wire fraud."  Id.  Again, Dr. Dietz will not testify as to Valle's mental capacity and whether he acted with criminal intent, and his opinions are not incompatible with a finding that Valle had the requisite criminal intent.

The Government's motion in limine concerning Dr. Dietz will be denied.

## CONCLUSION

For the reasons stated above, the Government's motions in limine to preclude Dr. Herriot and Dr. Dietz from testifying at trial are denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 39, 46).

Dated: New York, New York
       February 2, 2013          SO ORDERED.

_____
Paul G. Gardephe
United States District Judge