USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/13

Federal Defenders
OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director and Attorney-in-Chief*

*Appeals Bureau*
Barry D. Leiwant
*Attorney-in-Charge*

**MEMO ENDORSED**

Rule 15(a) of the Federal Rules of Criminal Procedure provides that in "exceptional circumstances" the Court may order that "a prospective witness be deposed in order to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1). "To establish that 'exceptional circumstances' exist, a defendant bears the burden of demonstrating that (1) a witness is unavailable for trial, (2) the witness's testimony is material, and (3) the witness's testimony is necessary to prevent a failure of justice." United States v. Kassar, 572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008) (quoting United States v. Cohen, 260 F.3d 68, 78 (2d Cir. 2001)). The Government cannot meaningfully address factors (2) and (3) without knowing who the witness is and what the substance of his testimony will be. Accordingly, defense counsel is directed to supplement the record on these points with a non-ex parte submission. The Government will then have an opportunity to respond, and the Court will then rule on the application.

February 4, 2013

Via E-mail

The Honorable Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *United States v. Valle*, No. 12-cr-00847-PGG

SO ORDERED:

Paul G. Gardephe, U.S.D.J.

Feb. 5, 2013

Dear Judge Gardephe:

The defense has identified an important foreign witness who is prepared to testify for Mr. Valle in this case. Because the witness lives abroad in Russia, the witness is not subject to the subpoena power of the Court, and the witness is unable and unwilling to travel to New York for trial. We therefore ask that the Court (1) allow us to present this witness's testimony live at trial via videoconference, and (2) authorize the defense to depose the witness abroad prior to trial pursuant to Fed.R.Crim.P. 15, so that the witness's testimony will be preserved in case the witness is unable to testify via videoconference as proposed. The defense will make every effort to present the witness's testimony live via videoconference, but requests permission to conduct a deposition to protect against the contingency that the witness may be unable to participate in a live videoconference during the trial.

The materiality of the proposed witness's testimony is set forth in the attached affidavit from counsel. Although the witness is voluntarily assisting the defense, due to work responsibilities, the witness cannot travel to New York in time for trial, as reflected in the witness's own attached affidavit.[1]

---

1 Because the affidavit from counsel and the identity of the witness reveal important aspects of the defense's trial strategy, these affidavits are being submitted to the Court *ex parte*. *See United States v. Straker*, 567 F. Supp. 2d 174, 179 (D.D.C. 2008) (accepting (*footnote continued*)

Under these circumstances, receiving testimony live via videoconference is entirely appropriate, as the Second Circuit has recognized. *See United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999). In *Gigante*, the government wished to call a witness who was suffering from a fatal cancer. It would have been "medically unsafe" for the witness to travel to the trial. *Id.* at 79. The district court permitted the witness to testify "via two-way, closed-circuit television," and the Second Circuit affirmed: "Upon a finding of exceptional circumstances, such as were found in this case, a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." *Id.* at 81.[2] Several other courts have followed the Second Circuit's lead and permitted the use of two-way videoconference technology at criminal trials.[3]

The case for videoconference testimony is even stronger here than it was in *Gigante*. Unlike *Gigante* and other cases in which videoconference testimony has been

---

(*continued from previous page*)

an *ex parte* defense submission on proposed deposition witnesses); *United States v. Khan*, No. 06-cr-255, 2008 WL 2323375, at *1 n.1 (E.D.N.Y. June 2, 2008) (same); *United States v. Marcos*, No. 87-cr-598 JFK, 1990 WL 58825, at *1 (S.D.N.Y. May 1, 1990) (same). If the defense does arrange a foreign deposition of the witness, we will give the government reasonable written notice of the name and address of the witness, and of the deposition's date and location. *See* Fed. R. Crim. P. 15(b)(1).

2 Where, as here, the videoconference is two-way (with both sides able to see each other), it is unnecessary to establish that the videoconference is "necessary to further an important state interest." *Maryland v. Craig*, 497 U.S. 836, 852 (1990) (permitting one-way videoconference testimony from child sex abuse victims); *Gigante*, 166 F.3d at 81 (it is "not necessary to enforce the *Craig* standard" for two-way videoconferences). In any event, this request satisfies *Craig*, because the videoconference is necessary to protect Mr. Valle's right to present evidence in his defense, which is an important state interest. *In re Morrissey*, 168 F.3d 134, 140 (4th Cir. 1999) ("Courts have agreed that protecting the right to a fair criminal trial . . . is a compelling state interest.").

3 *See, e.g.*, *United States v. Benson*, 79 F. App'x 813, 821 (6th Cir. 2003) (affirming the use of video testimony, where the witness said she was "underweight and fatigued" and too ill to travel); *Horn v. Quarterman*, 508 F.3d 306, 320 (5th Cir. 2007) (concluding that allowing the use of "two-way closed-circuit television [testimony in a state criminal case] was not an unreasonable application of clearly established federal law"); *Harrell v. Butterworth*, 251 F.3d 926, 931 (11th Cir. 2001) (same).

challenged, here the defendant will voluntarily waive his right to face-to-face confrontation with respect to this witness, to the extent that such rights would even arguably be implicated. *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999) (defendant may waive Confrontation Clause rights through counsel). Hence, the only legal complication that arose in those cases will not even potentially arise here. And of course, the videoconference testimony is in no way unfair to the government: As the Second Circuit and numerous other courts have recognized in allowing the government to use such testimony against defendants, a two-way videoconference affords ample opportunity for cross-examination. *See Gigante*, 166 F.3d at 80.

The fact that the witness will be testifying from a foreign country does not change the analysis. *Gigante* concluded that videoconference testimony at trial would be appropriate in any circumstance in which a videotaped deposition could be procured. *See* 166 F.3d at 81 ("Because [the videoconference] procedure may provide at least as great protection of confrontation rights as Rule 15, we decline to adopt a stricter standard for its use than the standard articulated by Rule 15."). Rule 15 expressly allows foreign depositions. *See* Fed. R. Crim. P. 15(c)(3); *United States v. Steele*, 685 F.2d 793, 808-09 (3d Cir. 1982). Indeed, in past cases, courts have presided over foreign Rule 15 depositions conducted via videoconference in much the same manner that the Court would preside at trial. *See, e.g.*, *United States v. Abu Ali*, 528 F.3d 210, 242 (4th Cir. 2008). The witness can take an oath administered by a court official in New York, and the witness's testimony can be controlled in the same respect that any other witness's testimony at trial would be.

If the Court is amenable to this request, the defense anticipates introducing the witness's testimony on March 4, 5, or 6. This is in the second week of the trial, which is expected to be part of the defense case.

* * *

The defense also requests leave to depose the same witness, at a location to be determined in Europe, so that the witness's deposition testimony can be preserved in the event that it becomes impossible to obtain testimony via videoconference. *See* Fed. R. Crim. P. 15(c)(3).[4]

---

4 Although the defense may seek to depose the witness in Russia, it may also seek to depose the witness elsewhere in Europe, to avoid logistical problems and to accommodate the witness's travel schedule. The Russian Federation unilaterally suspended judicial cooperation with the United States in civil matters in mid-2003, over a fee dispute with the U.S. Department of State. Although criminal depositions apparently have continued since the dispute began, *see United States v. Bortnick*, No. 03-cv-0414,

*(footnote continued)*

Exceptional circumstances and the interests of justice warrant a deposition here. *See* Fed. R. Crim. P. 15(a)(1). Because the witness is located in Russia, the witness is beyond the subpoena power of this Court and cannot be compelled to appear in person at trial. Although the witness is willing to assist this proceeding, the witness is unwilling and unable to travel to New York. This is sufficient to establish exceptional circumstances. *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir. 1980) (finding that "exceptional circumstances" existed where witnesses were not subject to subpoena in the United States, and had either refused to appear in person for trial or had not made arrangements to do so); *United States v. Farfan-Carreon*, 935 F.2d 678, 680 (5th Cir. 1991) (reversing defendant's conviction where defendant had not been allowed to depose a foreigner who was beyond the subpoena power of the court, where it was "unlikely" that the witness would attend the trial in person voluntarily).

Mr. Valle can attend this deposition via videoconference at the courthouse, and will waive his Rule 15(c)(1) right to be present in person, with respect to this witness's deposition, in writing. Because Mr. Valle is "waiv[ing] in writing the right to be present" at the deposition, the Court does not need to make any findings under Rule 15(c)(3). *See* Fed. R. Crim. P. 15 advisory committee's note, 2012 amendments (explaining that depositions may be held without the defendant present either after the court makes Rule 15(c)(3) findings, *or* where the defendant waives his right to be present).

Even if Rule 15(c)(3) were applicable here, this request would easily satisfy its terms. The importance of the testimony is set forth in the attached *ex parte* affidavit from counsel; the witness's own affidavit establishes that the witness cannot travel to the United States for trial or for a deposition; Mr. Valle cannot travel to Russia or elsewhere in person because the U.S. Marshals Service has no authority to keep Mr. Valle in custody on foreign soil, *see United States v. McKeeve,* 131 F.3d 1, 7 (1st Cir. 1997); *United States v. Salim,* 855 F.2d 944, 947 (2d Cir. 1988); and Mr. Valle can adequately participate in the deposition through videoconference technology at the courthouse in New York. Defense counsel will either take the deposition via the same videoconference monitor that Mr. Valle uses, or a representative of defense counsel will remain with Mr. Valle to facilitate communication between him and the defense lawyer that deposes the witness in person. *Cf. Abu Ali*, 528 F.3d at 239.

---

*(continued from previous page)*

2004 WL 2600869 (Nov. 15, 2004) (granting a motion by the government to conduct a Rule 15 deposition in Russia), the international dispute and the lack of U.S.-trained deposition support personnel in Russia may make it difficult or impossible to complete a Rule 15 deposition before trial.

In short, as numerous courts have recognized, foreign depositions are an entirely appropriate means of obtaining testimony in circumstances like those present here. *See Salim,* 855 F.2d at 952 (2d Cir. 1988); *see also United States v. Medjuck,* 156 F.3d 916, 920 (9th Cir. 1998); *United States v. McKeeve,* 131 F.3d 1, 8-10 (1st Cir. 1997); *United States v. Gifford,* 892 F.2d 263, 264-65 (3d Cir. 1989).

If the Court allows the proposed deposition, the defense also respectfully requests permission for the witness to make an oath or affirmation remotely via videoconference or telephone. Because U.S. depositions in Russia are somewhat uncommon, the defense is working with a U.S.-based litigation support firm that has experience conducting U.S. depositions in Russia. This service is costly, as a U.S.-trained court reporter and videographer need to be flown in from a nearby country. Similar logistical problems also are likely to arise if the deposition is held in Europe. However, with a remote oath, the defense can avoid unnecessary travel expenses and professional fees. *Cf. Hudson v. Spellman High Voltage*, 178 F.R.D. 29, 32 (E.D.N.Y. 1998) (permitting deposed witnesses to take oaths via telephone, so that remote depositions can be taken at lower cost).

For the foregoing reasons, we respectfully request that the Court permit the witness to testify via videoconference at trial on March 4, 5, or, 6, and grant the defense leave to conduct a Rule 15(a)(1) deposition.

Sincerely,

Julia L. Gatto
Assistant Federal Defender

(Attachments)

cc: Hadassa Waxman
Randall W. Jackson
Assistant U.S. Attorneys
(Via E-mail, Without Attachments)