UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                    :
UNITED STATES OF AMERICA
                                                    :
            - v. -
                                                    :        S4 12 Cr. 847 (PGG)
MICHAEL VAN HISE,
CHRISTOPHER ROBERT ASCH, and                         :
RICHARD MELTZ,
                                                    :
                    Defendants.
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**THE GOVERNMENT'S OPPOSITION TO DEFENDANTS MICHAEL VAN HISE,
CHRISTPOHER ROBERT ASCH AND RICHARD MELTZ'S
MOTIONS TO DISMISS AND FOR SEVERANCE**


                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America

BROOKE E. CUCINELLA
HADASSA WAXMAN
Assistant United States Attorneys
        - Of Counsel -

# TABLE OF CONTENTS

**Page**

RELEVANT BACKGROUND ......................................................................................1

ARGUMENT ...........................................................................................................5

    A.  Defendants' Motions To Dismiss Count One Of The Indictment For Failure To
        Allege Venue And The Interstate Commerce Element Of The Kidnapping Charge
        Should Be Denied ...........................................................................................5

        1.  Applicable Law ...................................................................................5

        2.  Discussion ..........................................................................................6

    B.  The Defendants' Motions For Severance Should Be Denied ...........................7

        1.  Applicable Law ...................................................................................7

            a.  Legal Standard for Severance .................................................7

            b.  Hearsay And Statements Against Penal Interest.....................10

            c.  The Confrontation Clause ....................................................12

        2.  Discussion ........................................................................................15

            a.  None Of The Defendants' Trial Rights Will Be Compromised By A Joint
               Trial....................................................................................16

                1.  Van Hise's Pre- And Post-Arrest Statements Will Be Properly
                   Redacted.................................................................16

                2.  Statements to Co-Conspirators and Undercover FBI Agents Do Not
                   Implicate Van Hise's Confrontation Clause Rights, And Are Not
                   Prejudicial ..............................................................19

                  i.      Statements Between Asch, Meltz, And The Undercover Do Not
                        Implicate Van Hise's Sixth Amendment Rights.................19

                  ii.     Statements Against Penal Interest Are Admissible Against The
                        Declarant and Van Hise ................................................21

             b.  If Tried Together, The Defendants Will Suffer No Prejudice ...............26

        3.  The Co-Conspirator Defenses Are Not Irreconcilable...............................26

i

CONCLUSION........................................................................................................................27

## TABLE OF AUTHORITIES

Page(s)

*Crawford v. Washington*,
    541 U.S. 36 (2004)..................................................................................................*passim*

*Davis v. Washington*,
    547 U.S. 813 (2006)................................................................................................*passim*

*Jones v. United States*,
    526 U.S. 227 (1999)........................................................................................................5

*Michigan v. Bryant*,
    131 S. Ct. 1143 (2011)....................................................................................................5

*Ohio v. Roberts*,
    448 U.S. 56 (1980)......................................................................................................16

*Richardson v. Marsh*,
    481 U.S. 200 (1987)...............................................................................................*passim*

*United States v. Attenasio*,
    870 F.2d 809 (2d Cir. 1989)...........................................................................................9

*United States v. Bahadar*,
    954 F.2d 821 (2d Cir. 1992)..........................................................................................22

*United States v. Beech-Nut Nutrition Corp.*,
    871 F.2d 1181 (2d Cir.1989)...........................................................................................5

*United States v. Benitez*,
    920 F.2d 1080 (2d Cir.1990)  .......................................................................................17

*United States v. Bin Laden*,
    109 F. Supp. 2d 211 (S.D.N.Y. 2000)............................................................................9

*United States v. Bronson*,
    No. 05 *Cr. 714 (NGG)*, 2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007) ............................6

*United States v. Cardascia*,
    951 F.2d 474 (2d Cir. 1991)......................................................................................8, 27

*United States v. Carson*,
    702 F.2d 351 (2d Cir. 1983).........................................................................................10

*United States v. Casamento*,
    887 F.2d 1141 (2d Cir. 1989).........................................................................................9

*United States v. Corr*,
 543 F.2d 1042 (2d Cir. 1976)......................................................................................10

*United States v. Dolah*,
 245 F.3d 98 (2d Cir. 2001)..........................................................................................22

*United States v. Feliz*,
 467 F.3d 227 (2d Cir. 2006)........................................................................................21

*United States v. Freyer*,
 333 F.3d 110 (2d Cir. 2003)..........................................................................................9

*United States v. Inadi*,
 475 U.S. 387 (1986)....................................................................................................14

*United States v. Jackson*,
 335 F.3d 170 (2d Cir. 2003)........................................................................................24

*United States v. Jass*
 *569 F.3d 47, 61 (2d Cir . 2009)* ................................................................................17

*United States v. Jimenez*,
 824 F. Supp. 351 (S.D.N.Y. 1993) ...............................................................................8

*United States* v. *Johnson*,
 121 Fed. Appx. 912 (2d Cir. 2005)..............................................................................24

*United States v. Katsougrakis*,
 715 F.2d 769 (2d Cir. 1983).......................................................................................11

*United States v. Kyles*,
 40 F.3d 519    (2d Cir.1994) ......................................................................................17

*United States v. Lasanta*,
 978 F.2d 1300 (2d Cir. 1992)..................................................................................8, 10

*United States v. Losada*,
 674 F.2d 167 (2d Cir. 1982)........................................................................................10

*United States v. Lumpkin*,
 192 F.3d 280 (2d Cir. 1999)........................................................................................24

*United States v. Lyles*,
 593 F.2d 182 (2d Cir. 1979)........................................................................................10

*United States v. Matthews*,
 20 F.3d 538 (2d Cir. 1994).........................................................................................25

*United States v. McClain*,
   377 F.3d 219 (2d Cir. 2004).............................................................................16

*United States v. Ohle*,
   678 F. Supp. 2d 215 (S.D.N.Y.2010)................................................................7

*United States v. Panza*,
   750 F.2d 1141 (2d Cir. 1984).......................................................................9, 10

*United States v. Park*,
   *278 Fed. Appx. 66*, 2008 WL 2164148 (2d Cir. May 22, 2008).......................21

*United States v. Pellon*,
   475 F. Supp. 467 (S.D.N.Y. 1979) ..................................................................27

*United States v. Pike*,
   *292Federal   Appx. 108*, 2008 WL 4163242 (2d Cir. Oct. 23, 2007).............21

*United States v. Pirro*,
   212 F.3d 86 (2d Cir. 2000)................................................................................5

*United States v. Potamitis*,
   739 F.2d 784 (2d Cir. 1984)..........................................................................6, 8

*United States v. Ramirez*,
   420 F.3d 134 (2d Cir. 2005)..............................................................................6

*United States* v. *Rodriguez*,
   706 F.2d 31 (2d Cir. 1983)..............................................................................22

*United States v. Rosa*,
   11 F.3d 315 (2d Cir. 1993)................................................................................8

*United States v. Saget*,
   377 F.3d 223 (2d Cir. 2004)............................................................... *passim*

*United States v. Salameh*,
   152 F.3d 88 (2d Cir. 1998)................................................................................9

*United States v. Salvador*,
   820 F.2d 558 (2d Cir. 1987)......................................................................23, 24

*United States* v. *Szur*,
   97 *Cr. 108 (JGK)*, 1998 WL 132942 (S.D.N.Y. Mar. 20, 1998).......................6

*United States v. Tramunti*,
    513 F.2d 1087 (2d Cir. 1975)........................................................................5,6

*See United States v. Tutino*,
    883 F.2d 1125 (2d Cir.1989) ........................................................................17

*United States v. Walsh*,
194 F.3d 37 (2d Cir. 1999)........................................................................ 5, 6

*United States v. Wexler*,
    522 F.3d 194 (2d Cir. 2008)........................................................................11

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)................................................................ passim

*United States v. Yannotti*,
    541 F.3d 112 (2d Cir. 2008)........................................................................5

*United States v. Yousef*,
    327 F.3d 56, 149 (2d Cir.2003) ................................................................17

*United States v. Zackson*,
    6 F.3d 911 (2d Cir. 1993)........................................................................10

*Williamson v. United States*,
    512 U.S. 594 (1994)................................................................ passim

*Zafiro v. United States*,
    506 U.S. 534 (1993)................................................................ passim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                     :

UNITED STATES OF AMERICA
                                     :

         - v. -
                                     :      S4 12 Cr. 847 (PGG)

MICHAEL VAN HISE,
CHRISTOPHER ROBERT ASCH, and      :
RICHARD MELTZ,

                                     :
                  Defendants.
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### THE GOVERNMENT'S OPPOSITION TO DEFENDANTS MICHAEL VAN HISE, CHRISTPOHER ROBERT ASCH AND RICHARD MELTZ'S MOTIONS TO DISMISS AND FOR SEVERANCE

        The Government respectfully submits this memorandum of law in opposition to

defendants Michael Van Hise, Christopher Robert Asch and Richard Meltz's motions to (1)

dismiss Count One of the fourth Superseding Indictment for failure to properly allege venue and

the interstate commerce element of the charged kidnapping offense; and (2) for severance.   As

discussed in more detail below, the defendants' motions should be denied in their entirety. First,

the allegations contained in the Superseding Indictment are alone adequate to survive a pretrial

motion to dismiss, and the question of whether there is sufficient evidence to support venue and

the interstate commerce element is appropriately left for trial.   Second, since the defendants have

failed to articulate any prejudice they would suffer. or trial rights they would be denied, their

severance motions are without merit.

### RELEVANT BACKGROUND

        On or about November 15, 2012, a Grand Jury in this District returned Indictment 12 Cr.

847 (PGG), charging Gilberto Valle with, among other things, participating in a conspiracy with

Michael Van Hise, then identified as a "coconspirator not named herein," to kidnap a young woman from Manhattan. Thereafter, the FBI met with Van Hise who told agents that he had been communicating with individuals later identified as Christopher Robert Asch and Richard Meltz about kidnapping, raping, and murdering his wife, sister-in-law and her minor children ("Van Hise's Family Members"). Van Hise also told agents that he and Asch had met in New Jersey to discuss the kidnapping; an email exchange between Asch and Van Hise also references the fact that the men had previously met. While Van Hise originally attempted to cooperate with law enforcement, this cooperation was ultimately unsuccessful, for a number of reasons, including his false claims that he was working with New Jersey enforcement officers in investigating Asch and Meltz.

On or about January 4, 2013, Van Hise was arrested on a complaint charging him in one count with agreeing with Valle to kidnap the young woman from Manhattan, and with participating in a conspiracy with Asch and Meltz, then identified as coconspirator-2 ("CC-2") and coconspirator-3 ("CC-3"), to kidnap, rape, and murder Van Hise's Family Members.

On or about January 31, 2013, the Grand Jury returned Superseding Indictment S1 12 Cr. 847 (PGG), charging Van Hise with participating in a kidnapping conspiracy with Valle. The FBI's investigation into Asch and Meltz continued, and included the introduction of two male undercover FBI agents claiming to be interested in participating in a kidnapping; the introduction of a female undercover FBI agent posing as a potential kidnapping target (the "Female UC"); recorded conversations between the undercover agents and Asch and Meltz; and a Title III wiretap. During recorded phone conversations, while attempting to establish a relationship of trust with his potential co-conspirator, Asch stated, among other things, that he and Van Hise met

3

in New Jersey to discuss their shared interest in kidnappings, and to scout locations suitable for "dumping" a body.

On or about April 15, 2013, Asch and Meltz were charged by complaint with participating in a conspiracy to kidnap, rape, and murder Van Hise's Family Members and the Female UC. On or about April 24, 2013, the Grand Jury returned Superseding Indictment S2 12 Cr. 847 (PGG), charging Van Hise, Asch, and Meltz together in a single count with conspiring together to kidnap women and children (the "S2 Indictment") from the spring of 2011, up to and including April 15, 2013. This charge encompassed Van Hise's discussions with Asch and Meltz about kidnapping Van Hise's Family Members, and also Asch and Meltz's kidnapping plans with respect to the Female UC.[1]

On or about September 18, 2013, to address the Court's concerns about jury confusion stemming from Van Hise's withdrawal from the conspiracy upon his arrest in January 2013, and Asch and Meltz's new focus on the Female UC as the kidnapping target, the Government presented to the Grand Jury, and the Grand Jury returned, a fourth superseding indictment that divided the kidnapping charge into two separate counts (the "Fourth Superseding Indictment"). Specifically, Count One of the Fourth Superseding Indictment charges Van Hise, Asch and Meltz with participating in a conspiracy between spring 2011 through January 2013 to kidnap Van Hise's Family Members. Count Two charges Asch and Meltz with conspiring between January 2013 and April 15, 2013, to kidnap the Female Undercover.   Van Hise, Asch and Meltz are presently scheduled to begin trial on the Fourth Superseding Indictment on February 24, 2014.

---

1 On or about August 12, 2013, the Grand Jury returned Superseding Indictment S3 12 Cr. 847 (PGG) that added child pornography charges against Asch. The Government has consented to severance of the child pornography counts.

ARGUMENT

**A.    Defendants' Motions To Dismiss Count One Of The Indictment For Failure To Allege Venue And The Interstate Commerce Element Of The Kidnapping Charge Should Be Denied**

The defendants' move to dismiss Count One of the Fourth Superseding Indictment on the grounds that the Indictment fails to adequately allege (1) the interstate commerce element of the charged kidnapping conspiracy; and (2) venue.   This argument is entirely without merit.   The Indictment states the essential elements of the charges against the defendants, and is therefore sufficient to survive a pretrial motion to dismiss.

**1.    Applicable Law**

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him."   *United States* v. *Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) (citing *Jones* v. *United States*, 526 U.S. 227, 232 (1999)).   Little more is required.   *See* Fed. R. Crim. P. 7(c)(1) (describing indictment as a "concise . . . statement of the essential facts.").   Indeed, the Second Circuit has "consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'"   *United States* v. *Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (quoting *United States* v. *Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975)); *see also United States* v. *Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008).

As to venue, the United State Constitution provides that a defendant has the right to trial in "the district wherein the crime shall have been committed." U.S. Const., Amend. VI; *see also United States* v. *Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989).   Where "the acts constituting the crime and the nature of the crime charged implicate more than one location, venue is properly laid in any of the districts where an essential conduct element of the crime took place."

5

*United States* v. *Ramirez*, 420 F.3d 134, 139 (2d Cir.2005). The Government bears the burden at trial of proving venue by a preponderance of the evidence. *United States* v. *Potamitis,* 739 F.2d 784, 791 (2d Cir.1984).   That criminal conduct occurred within the venue, "even if phrased broadly and without a specific address or other information," in order to satisfy its burden with regard to pleading venue. *United States* v. *Bronson*, No. 05 Cr. 714 (NGG), 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007); *see also United States* v. *Szur*, 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998).

    **2.**    **Discussion**

Count One of the Fourth Superseding Indictment accurately tracks the language of the statute charged.   It charges, among other things, that Van Hise, Asch and Meltz "would unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold for ransom and reward and otherwise, a person, *and use a means, facility, and instrumentality of interstate commerce in committing and in furtherance of the commission of the kidnapping*, in violation of Title 18, United States Code, Section 1201."   Fourth Superseding Indictment, ¶ 2 (emphasis added).   In addition to tracking the language of the applicable statute, Count One specifies "the time and place (in approximate terms) of the alleged crime." *United States* v. *Walsh*, 194 F.3d at 44 (quoting *United States* v. *Tramunti*, 513 F.2d at 1113). The law does not require any more.

Moreover, the criminal complaints and discovery in the case have made abundantly clear that the Government intends to prove the "interstate commerce" element of the kidnapping conspiracy through the electronic, internet based communications between and among Van Hise, Asch and Meltz, and the defendants' use of cellular telephones to communicate about the kidnapping conspiracy.   *United States* v. *Mejia*, 545 F.3d 179, 203 (2d Cir. 2008) ("Use of an

instrumentality of commerce, such as telephone lines, is also generally viewed as an activity that affects interstate commerce."); *United States* v. *Giordano*, 442 F.3d 30, 39-41 (2d Cir. 2006) (Sotomayor, J.) (finding that even intrastate use of a telephone satisfied the element of "any facility or means of interstate … commerce" in Title 18, United States Code, Section 2425)   Thus, because the Fourth Superseding Indictment faithfully tracks the relevant statutory language, and the defendants are on notice - through the complaints, the indictments and discovery - of the Government's theory on the interstate commerce element, the motion to dismiss Count One should be denied.

As to the defendants' arguments with respect to the sufficiency of allegation on venue, it is of course the case that there is no "summary judgment" procedure in federal criminal cases. Thus, if an indictment alleges that an offense occurred in this district "and elsewhere," as is alleged in Count One of the Fourth Superseding Indictment, a pretrial motion to dismiss for lack of venue should be denied and the question of whether the government can prove venue must be left for trial. *See United States* v. *Ohle*, 678 F.Supp.2d 215, 231 (S.D.N.Y.2010). Accordingly, the motion to dismiss should be denied.

## B.     The Defendants' Motions For Severance Should Be Denied

### 1.     Applicable Law

#### a.     Legal Standard For Severance

The Supreme Court has made plain that there is a "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). This preference reflects a settled precept in criminal law: joint trials "play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).    They

promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of

inconsistent verdicts."   *Id.* at 210; *Zafiro*, 506 U.S. at 537.   Joint trials of defendants indicted

together also serve to "conserve prosecutorial resources, diminish inconvenience to witnesses,

and avoid delays in the administration of criminal justice."   *Richardson*, 481 U.S. at 217 (1987)

(Stevens, J., dissenting).   The Richardson Court explained:

> It would impair both the efficiency and the fairness of the criminal
> justice system to require . . . that prosecutors bring separate proceedings,
> presenting the same evidence again and again, requiring victims and
> witnesses to repeat the inconvenience (and sometimes trauma) of
> testifying, and randomly favoring the last-tried defendants who have the
> advantage of knowing the prosecution's case beforehand. Joint trials
> generally serve the interests of justice by avoiding inconsistent verdicts
> and enabling more accurate assessment of relative culpability —
> advantages which sometimes operate to the defendant's benefit.

*Id.* at 210 (footnote omitted).   Thus, even where joint trials invite some prejudice to defendants,

"[t]he risks of prejudice attendant in a joint trial are presumptively outweighed by the

conservation of time, money, and scarce judicial resources that a joint trial permits."   *United*

*States v. Jimenez*, 824 F. Supp. 351, 366 (S.D.N.Y. 1993).

The presumption in favor of joint trials is so strong that the Second Circuit has stated that

"[t]he principles that guide the district court's consideration of a motion for severance usually

counsel denial."   *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993).   Indeed, "[t]he

decision whether to sever multi-defendant trials is committed to the sound discretion of the trial

court and is 'virtually unreviewable.'" *United States v. Lasanta*, 978 F.2d 1300, 1306 (2d Cir.

1992) (abrogated on other grounds) (quoting *United States v. Cardascia*, 951 F.2d 474, 482 (2d

Cir. 1991)).   A defendant seeking severance therefore shoulders the "extremely difficult burden"

of showing that he would be so prejudiced by joinder that he would be denied a fair trial.

*United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (internal quotation marks omitted).   It is not enough for a defendant to show that he "may have a better chance of acquittal in [a] separate trial[]."   *Zafiro*, 506 U.S. at 540.

    "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."   *Id*. at 539; *see also United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) (explaining that prejudice must be "sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials").   Even in those rare instances where a defendant establishes a "high" risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."   *Zafiro*, 506 U.S. at 539 (citing *Richardson*, 481 U.S. at 211); *see also United States v. Freyer*, 333 F.3d 110, 114 (2d Cir. 2003).

    The presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme."   *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).   *See also Freyer*, 333 F.3d at 114 (holding that joinder of defendants is "proper when the alleged acts are 'unified by some substantial identity of facts or participants or a common plan.'" (quoting *United States v. Attenasio*, 870 F.2d 809, 815 (2d Cir. 1989))); *United States v. Bin Laden*, 109 F. Supp. 2d 211, 214 (S.D.N.Y. 2000) ("When more than one defendant is accused of participating in the same act or transaction or series of acts or transactions, federal law expresses a strong preference for a single, joint trial of all defendants." )

    Even where evidence is admissible against only one defendant in a multi-defendant case,

9

severance is not automatically granted.   The Second Circuit has repeatedly recognized that "the fact that evidence may be admissible against one defendant but not against another does not necessarily require a severance."   *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983); *see also United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982); *United States v. Lyles*, 593 F.2d 182, 190 (2d Cir. 1979).   Any spillover prejudice that may occur is generally corrected by the Court's instruction that the jury consider the guilt of each defendant individually—an instruction that jurors are presumed to be able to follow. *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir. 1984); *see also Lasanta*, 978 F.2d at 1307 (2d Cir. 1992) ("[t]he district court countered any possible spillover with specific instructions to the jury . . . that the jury should consider the evidence separately against each defendant"); *United States v. Zackson*, 6 F.3d 911, 922 (2d Cir. 1993).

Even assuming that a particular defendant is somehow prejudiced by joinder with a co-defendant, the standard under Federal Rule of Criminal Procedure 14 is not whether there is any prejudice, but whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials."   *United States v. Panza*, 750 F.2d at 1149.   The presumption in favor of joint trials thus "conserves judicial resources, alleviates the burden on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials."   *Lyles*, 593 F.2d at 191 (internal quotation marks omitted); *United States v. Corr*, 543 F.2d 1042, 1052 (2d Cir. 1976).

### b.    Hearsay And Statements Against Penal Interest

Unless excepted by Federal Rule of Evidence 801(d), any out-of-court statement offered for the truth of the matter asserted constitutes hearsay, and is inadmissible unless a federal

10

statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide

otherwise.   *See* Fed. R. Evid. 801(c), 802.   If a declarant is "unavailable," however, the

Federal Rules of Evidence provide an exception to the hearsay rule for statements "against

interest," which are defined as those that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3). "Rule 804(b)(3) is founded on the commonsense notion that

reasonable people, even reasonable people who are not especially honest, tend not to make

self-inculpatory statements unless they believe them to be true."   *Williamson* v. *United States*,

512 U.S. 594, 599 (1994).

To satisfy Rule 804(b)(3), the proponent of the statement must show by only a

preponderance of the evidence: "'(1) that the declarant is unavailable as a witness, (2) that the

statement is sufficiently reliable to warrant an inference that a reasonable man in [the

declarant's] position would not have made the statement unless he believed it to be true, and (3)

that corroborating circumstances clearly indicate the trustworthiness of the statement.'"   *United*

*States* v. *Wexler*, 522 F.3d 194, 202 (2d Cir. 2008) (quoting *United States* v. *Katsougrakis*, 715

F.2d 769, 775 (2d Cir. 1983)) (alteration in original).   In general, a statement is against penal

interest if "a reasonable person in the declarant's shoes would perceive the statement as

detrimental to his or her own penal interest." *United States* v. *Saget,* 377 F.3d 223, 231 (2d Cir.

2004). "Whether a challenged statement is sufficiently self-inculpatory can only be answered by

11

viewing it in context." *United States* v. *Williams*, 506 F.3d 151, 155 (2d Cir. 2007).

      c.      **The Confrontation Clause**

Where hearsay is admissible under the Federal Rules of Evidence, it may nevertheless be prohibited by the Confrontation Clause of the Sixth Amendment. In *Crawford* v. *Washington*, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."   541 U.S. at 53-54. The Supreme Court was careful, however, to limit its holding to "testimonial" hearsay—that is, to "testimonial" statements offered to establish the truth of the matter asserted.   *See Davis* v. *Washington*, 547 U.S. 813, 821 (2006) ("A critical portion of [*Crawford*'s] holding … is the phrase "testimonial statements.'"); *Crawford*, 541 U.S. at 59 n.9 ("The [Confrontation] Clause … does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").   Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause.   It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."   *Davis* v. *Washington*, 547 U.S. at 821.

     The *Crawford* Court anchored the limitation of its holding to "testimonial" statements in the text of the Confrontation Clause.   That Clause, the Supreme Court explained, "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'   'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" 541 U.S. at 51 (quoting 2 Noah Webster, An American Dictionary of the English Language (1828)).   The Supreme Court made clear that certain statements are "by their

nature" not testimonial. *Id.* at 56. By contrast, certain statements, almost by definition, qualify: "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. With respect to the last category, however, the Court stressed that it used the term "interrogation" in "its colloquial, rather than any technical legal sense. … [O]ne can imagine various definitions …, and we need not select among them in this case." *Id.* at 53 n.4.

*Crawford* involved the admissibility of statements by the defendant's wife, made during a formal, tape-recorded interview at a police station house several hours after she had witnessed the defendant stab another person. At the time, the wife herself was a suspect in the crime, and the interrogation followed a Miranda warning. *See* 541 U.S. at 38, 53 n.4; *Davis*, 547 U.S. at 827, 830. The *Crawford* Court held that the wife's statements were testimonial and therefore inadmissible since the defendant did not have a prior opportunity for cross-examination. The Supreme Court surveyed "[v]arious formulations" of the term testimonial, 541 U.S. at 51-52, but it ultimately declined to adopt a "comprehensive definition" of the term, *id.* at 68, concluding that the police interrogation of the defendant's wife qualified under "any conceivable definition." *Id.* at 53 n.4; *see generally United States* v. *Saget*, 377 F.3d at 228-29 (noting that, although the *Crawford* Court did not provide a comprehensive definition, "the types of statements cited by the Court as testimonial share certain characteristics: all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect his or her responses might be used in future judicial proceedings").

In *Davis* v. *Washington*, 547 U.S. at 817-22, the Supreme Court further clarified the definition of "testimonial" in the context of police interrogations. In a pair of cases decided

jointly, the Court considered two kinds of statements: a 911 call and a police interview

conducted at the scene of a domestic disturbance.    Focusing on the particular statements at

issue, the Court framed its holding as follows:

> Statements are nontestimonial when made in the course of police interrogation under
> circumstances objectively indicating that the primary purpose of the interrogation is to
> enable police assistance to meet an ongoing emergency. They are testimonial when the
> circumstances objectively indicate that there is no such ongoing emergency, and that the
> primary purpose of the interrogation is to establish or prove past events potentially
> relevant to later criminal prosecution.

*Id.* at 822.

Applying these standards, the Supreme Court unanimously concluded that the 911 call,

although the product of police interrogation, was not testimonial.    Whereas the interrogation at

issue in *Crawford* was "solely directed at establishing the facts of a past crime, in order to

identify (or provide evidence to convict) the perpetrator," a 911 call, the Court reasoned, "is

ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact."    *Id.* at 827.

Moreover, the circumstances of the interrogation "objectively indicate its primary purpose was to

enable police assistance to meet an ongoing emergency. [The declarant] was not acting as a

*witness*; she was not *testifying*. What she said was not 'a weaker substitute for live testimony' at

trial."    *Id.* at 828 (emphasis in original) (quoting *United States* v. *Inadi*, 475 U.S. 387, 394

(1986)).

By contrast, the Supreme Court concluded that the police interview conducted at the

scene of a possible crime was testimonial.    The police officer who conducted the questioning

"was not seeking to determine … 'what is happening,' but rather 'what happened.'    Objectively

viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a

possible crime."    *Id.* at 830.    The interrogation, the Court reasoned, was "not much different"

14

from the interrogation in *Crawford*: both were "part of an investigation into possibly criminal past conduct"; both declarants "were actively separated from the defendant"; both statements "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed"; and "both took place some time after the events described were over." *Id.* "Such statements under official interrogation," the Court concluded, "are an obvious substitute for live testimony, because they do precisely what a witness does on direct examination; they are inherently testimonial." *Id.* (emphasis in original).

Since *Davis*, the Supreme Court has continued to emphasize the importance of the question of whether a statement is "testimonial." Where those statements are oral, the Supreme Court has typically concerned itself with responses to questions by authorities, and has explained that "when a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." *Michigan* v. *Bryant*, 131 S. Ct. 1143, 1162 (2011). Indeed, in *Bryant*, the Supreme Court found that a statement to the police in response to police questioning was *not* testimonial where "the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency,'" *id.* at 1165 (quoting *Davis*, 547 U.S. at 822), and "the situation and interrogation" were informal, as opposed to a "structured, station-house interview," *id.* at 1166.

Following *Crawford*, testimonial statements may never be introduced against a defendant unless he or she had an opportunity to cross-examine the declarant. *See Saget*, 377 F.3d at 226. The Court's holding left "somewhat less clear" whether nontestimonial statements are subject to

scrutiny under the Confrontation Clause.   *Id.* at 227.    In *Saget*, however, the Second Circuit

concluded that, with respect to such statements, *Crawford* left intact the preexisting approach to

Confrontation Clause analysis—the "reliability test" of *Ohio* v. *Roberts*, 448 U.S. 56, 66.   *See*

*Saget*, 377 F.3d at 227; *accord United States* v. *McClain*, 377 F.3d 219, 221 n.1 (2d Cir. 2004).

Thus, the proper analysis requires first a determination of "whether the statements are

testimonial, triggering Crawford's per se rule against their admission.    If the statements are not

testimonial, their admission [does] not violate the Confrontation Clause so long as the statements

fall within some firmly rooted hearsay exception or demonstrate particularized guarantees of

trustworthiness."   *Saget*, 377 F.3d at 227 (citing *Roberts*, 448 U.S. at 66).[2]

### 2.    Discussion

#### a.    None Of The Defendant's Trial Rights Will Be Compromised By A Joint Trial.

##### 1.    Van Hise's Pre And Post-Arrest Statements Will Be Properly Redacted

Severance is not warranted under *Crawford* or *Bruton*.    Asch and Meltz have moved for

severance from Van Hise based on certain pre and post-arrest statements Van Hise made to law

enforcement.    These statements are clearly admissible against Van Hise as a party admission.

Fed. R. Evid. 801(d)(2).    Because they are testimonial in nature, however, to the extent they

---

2  The continuing viability of the *Roberts* test with respect to nontestimonial statements (and, therefore, the Second Circuit's holding on that score in *Saget*) is arguably even less clear following *Davis* than it was following *Crawford*. First, in *Davis*, the Supreme Court referred more than one time to having "overruled *Roberts* in *Crawford*," 126 S. Ct. at 2275 n.4, giving no indication that its internment of *Roberts* was only partial. *See also id.* at 2280.    Second, as noted above, in describing the importance of the testimonial-nontestimonial distinction, the Supreme Court stated as follows: "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."   *Id.* at 2273 (emphasis added).    At a minimum, therefore, *Davis* strongly suggests that nontestimonial hearsay is not subject to Confrontation Clause scrutiny—whether under *Roberts* or otherwise.    In any event, because—as discussed below—the statements at issue in this case were plainly admissible even under *Roberts*, as they "fall within some firmly rooted hearsay exception," *Saget*, 377 F.3d at 227 (citing *Roberts*, 448 U.S. at 66), there is no need for this Court to resolve the issue in this case.

implicate either Asch or Meltz, the Confrontation Clause is unquestionably implicated.    But,

contrary to defendants' assertion, this does not present an incurable *Bruton* problem, and

certainly does not require severance.

      Rather, Van Hise's statements can be redacted in a way that eliminates the use of either

Asch or Meltz's name, a practice that is commonplace in this district and has been upheld

—repeatedly— by the Second Circuit.    *See United States v. Tutino*, 883 F.2d 1125, 1135 (2d

Cir.1989) (approving substitution of neutral words "others," "other people," and "another

person" for names of co-defendants in confession of non-testifying defendant); *see also, e.g.,*

*United States v. Yousef*, 327 F.3d 56, 149 (2d Cir.2003) (upholding redaction of co-defendant's

name to "my neighbor"); *United States v. Kyles*, 40 F.3d 519, 526 (2d Cir.1994) (upholding

redaction of co-defendant's name to "he"); *United States v. Williams*, 936 F.2d 698, 701 (2d

Cir.1991) (upholding redaction of co-defendant's name to "this guy"); *United States v. Benitez*,

920 F.2d 1080, 1087 (2d Cir.1990) (upholding redaction of co-defendant's name to "friend").

The Second Circuit recently reaffirmed this line of cases and this practice in *United States v.*

*Jass*, 569 F.3d 47, 61 (2d Cir . 2009).      In *Jass*, the Second Circuit affirmed the admission of a

co-defendant's post-arrest confession where the District Court instructed the jury not to use

confession in any way against defendant, and the confession was redacted in a way that

permitted the jury to follow the limiting jury instruction.    *Id.* at 63-64.    Specifically, the

defendant's name was redacted from codefendant's confession, and the jury would have had to

refer to other trial evidence to link the defendant to redacted confession. The Second Circuit

instructed that:

    while redaction may not cure all *Bruton* issues, the "critical inquiry is,
    thus, not whether a jury might infer from other facts (whether evidence

admitted at trial or circumstances such as the number of defendants on trial) that a declarant's neutral allusion to a confederate might have referenced the defendant. It is whether the neutral allusion sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction.

*Id.* at 60 (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).

Following the test laid out by the Second Circuit in *Jass*, the Court here will have to review Van Hise's redacted statement to determine whether it "indicat[ed] to the jury that the original statement contained actual names" and "second, whether the redacted confession, even if 'the very first item introduced at trial' would 'immediately' inculpate Meltz or Asch in the charged crime."   *Id* at 61 (internal citations omitted); *see also United States v. Williams*, 936 F.2d at 700-01 (considering redacted confession "in isolation from the other evidence introduced at trial" to assess whether it incriminates defendant).   The Government submits that, as was the case in *Jass*, the agent testifying at trial will easily be able to omit any mention of Asch or Meltz's name from the pre and post-arrest statements made by Van Hise.   Rather, the agent, when necessary, will use neutral pronouns and or substitutions that will in no way allow the jury to infer that the statement originally contained names (much less the names of Van Hise's co-defendants).   It is the Government's intention to work with defense counsel and, if necessary, the Court, to ensure that these redactions are done properly.   After the redactions are complete,   the Government submits that it will be impossible for jurors to connect the statements to Van Hise's co-defendants based on the statements alone, and in no way inhibiting the jurors' ability to follow the limiting instructions provided by the Court.   Thus, the redacted statements will pose no *Crawford* or *Bruton* issues, and they will be admissible in a joint trial of the defendants rendering severance on this basis unnecessary.

18

2.     **Statements to Co-Conspirators and Undercover FBI Agents Do Not Implicate Van Hise's Confrontation Clause Rights, And Are Not Prejudicial**

Van Hise has moved for severance from his co-conspirators because, among other reasons, Asch and Meltz made statements in conversations with the FBI undercover agents in connection with the Count Two conspiracy which implicate Van Hise.    *First*, because these statements are non-testimonial, they pose neither a *Bruton* nor a *Crawford* issue.    *Second*, to the extent that the Government has identified statements which it intends to introduce against Van Hise, those statements, along with being in furtherance of the Count Two conspiracy, are also statements against interest, and admissible against both the declarant and Van Hise, whether they are tried together or separately.    Accordingly, Van Hise's argument for severance on this basis is meritless, and should be denied.

i.     **Statements between Asch, Meltz, and the Undercover Do Not Implicate Van Hise's Sixth Amendment Rights**

Van Hise's claim that his Confrontation Clause rights are implicated by the admission of certain statements made between his co-defendants and the undercover agent is misguided and inaccurate.    To determine whether a statement implicates the Confrontation Clause, the Court must first determine whether the statement at issue is testimonial in nature.    In *United States v. Saget*, 377 F.3d 223 (2d Cir. 2004), the Second Circuit held that "a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of *Crawford*."    *Id.* at 229.    In writing for the *Saget* panel, then-Judge Sotomayor explained that *Crawford* instructs that the critical factor in identifying a Confrontation Clause concern is "the declarant's awareness or expectation that his or her

19

statements may later be used at a trial."   *Id.* at 228 (identifying as testimonial under *Crawfor*d "a declarant's knowing responses to structured questioning in an investigative environment or in a courtroom setting where the declarant would be reasonably expect that his or her responses might be used in later judicial proceedings.") (quoting authority omitted).

Thus, the proper inquiry here is whether Asch or Meltz, at the time he made his statements to the undercover or each other, had an awareness or expectation that his statements may later be used at trial.   The circumstances surrounding when, and in what context, the statements at issue were made are key to the analysis:   here, the statements were made to an individual that was believed to be a co-conspirator, during conversations, meetings, and email exchanges involving the planning of a kidnapping.   There is absolutely no indication that Asch or Meltz believed that "Darren" was a government agent or that his statements would be used in a judicial proceeding at some later point.   Rather, "Darren" was an individual that Asch and Meltz believed shared their interest in kidnapping, raping, and torturing women, and with whom they were actively planning to commit a crime.   Indeed, Asch, Meltz, and "Darren" engaged in numerous conversations as part of the planning process, many of which served to establish trust between the men, as well as to determine the best way to carry out their plans.   All of these facts lead to the conclusion that Asch and Meltz had no awareness, much less an expectation, that the statements made to the undercover would be later used at a trial.   *See Crawford,* 541 U.S. at 51-68 (2004). Accordingly, Asch and Meltz's statements to the undercover agent are non-testimonial.

Once statements are determined to be non-testimonial, the Confrontation Clause inquiry comes to an end.   In *Williams*, 506 F.3d at 156, the Second Circuit clarified that, following the

Supreme Court's decisions in Crawford and Davis¸ the "inquiry under the Confrontation Clause is whether the statement at issue is testimonial.   If so, the Confrontation Clause requirements of unavailability and cross-examination apply.   If not, the Confrontation Clause poses no bar to the statement's admission."   Id. at 156.   *See also United States v. Feliz*, 467 F.3d 227, 231-32 (2d Cir. 2006) (finding that the Supreme Court made clear in *Davis* "that the right to confrontation only extends to testimonial statements, or, put differently, the Confrontation Clause simply has no application to non-testimonial statements.") (internal quotations and citations omitted). Because Asch and Meltz's statements are non-testimonial, the Confrontation Clause is no bar to their admissibility.   *See United States* v. *Pike*, 292 Fed. Appx. 108, 2008 WL 4163242 (2d Cir. Oct. 23, 2007) (finding a declarant's statement against interest admissible against a co-conspirator and non-testimonial where the declarant "made the statement to a fellow inmate and would have had no reason to believe it would be used in a judicial proceeding,"); *United States* v. *Park*, 278 Fed. Appx. 66, 2008 WL 2164148 (2d Cir. May 22, 2008) (holding that a statement made to an undercover is non-testimonial when the speaker "was unaware of the identity of the agent during the phone calls.")

        **ii.   Statements Against Penal Interest Are Admissible Against The Declarant and Van Hise**

        To the extent that the Government intends to introduce statements that implicate Van Hise but were made during the pendency of the conspiracy charged in Count Two of the Indictment, those statements are admissible as statements against interest.   Accordingly, those statements would be admissible against Van Hise whether he is tried with his co-conspirators or separately, and thus form no basis for severance.   While, at this point, the Government has not identified

which statements it intends to introduce against Van Hise,[3] defense counsel in its motion,

specifically challenges a statement Asch made to the undercover regarding a prior meeting

between Van Hise and Asch in which they discussed their shared interest in kidnapping, and drove

around together to look at potential areas to identify victims and/or areas to dump bodies (the

"Statement").[4]   The Statement is admissible as a statement against penal interest if it satisfies

three elements: (1) Asch must be "unavailable," *see* Fed. R. Evid. 804(a); (2) the statement must

have been, at the time of its making, "against the declarant's (penal) interest," *United States* v.

*Rodriguez*, 706 F.2d 31, 40 (2d Cir. 1983), Fed. R. Evid. 804(b)(3)(A); and (3) "corroborating

circumstances" must "clearly indicate the trustworthiness of the statement," Fed. R.

Evid. 804(b)(3).   The Statement easily meets these criteria for admissibility as a statement against

interest.

      First, Asch is "unavailable" for the purposes of Rule 804(b).   "[I]t is settled in this Circuit

that a witness who invokes the privilege against self-incrimination is 'unavailable' within the

meaning of Rule 804(b)."   *United States* v. *Dolah*, 245 F.3d 98, 102 (2d Cir. 2001).   Asch will be

unavailable for purposes of Rule 804(b) if he asserts his Fifth Amendment right not to testify.

*See*, *e.g.*, *United States* v. *Bahadar*, 954 F.2d 821, 824 (2d Cir. 1992).   Asch has not indicated his

---

[3] The Government is in the process of identifying the evidence it intends to introduce as part of its case-in-chief, and of creating transcripts of the calls and meets that occurred between the defendants and the undercover agents.   The Government addresses the admissibility of one exemplary statement here, and intends to identify and brief the admissibility of additional statements closer to trial.   To the extent that statements are inadmissible against Van Hise, the indictment is structured in such a way as to permit limiting instructions to cure any potential prejudice.

[4] The Government has provided the Court with copies of the audio from the recording devices used during this meeting, as well as very rough transcripts from those audio devices. Because the two men met in a public place, the quality of the audio is very poor.   Accordingly, the Government will be primarily relying on testimony from the undercover agent regarding the Statement.   At the Court's request, the Government will provide a proffer of this testimony closer to trial.

intent to testify and therefore this Court should consider him to be unavailable as a witness pursuant to Rule 804(a)(1)&(2).[5]

Second, the Statement is clearly against Asch's penal interest.   He admits to the undercover—whom he believes to be an individual looking to kidnap, rape, and torture a woman with him—that he and Van Hise got together to discuss potential victims and scout areas to dump bodies.   This is plainly against Asch's penal interest:   he is explicitly admitting that he was discussing kidnapping, rape, and conspiracy, among other crimes, with Van Hise, an individual known to both men (and, at the time of the Statement, notorious based on his highly-publicized arrest) .   Morever, Asch's statement makes clear that the both he and Van Hise were involved in the discussion, and in no way exculpates himself from the conspiratorial conduct—indeed, Asch makes the statement to "Darren" in an effort to bolster his own credibility as someone who intends not just to fantasize about these brutal plans, but to carry them out in real life.   This adds indicia of credibility.   *See*, *e.g.*, *United States* v. *Salvador*, 820 F.2d 558, 561 (2d Cir. 1987) ("[t]he structure of [804(b)(3)] and its wording demonstrate the obvious suspicion with which the drafters of the Rule regarded a statement exposing the declarant to criminal liability but exculpating the accused.").

The fact that Asch also inculpated Van Hise does not make the Statement any less admissible under the Second Circuit's precedents.   In *Saget*, for example, the defendant challenged the admission under Rule 804(b)(3) of out-of-court statements that implicated both the declarant and the defendant.   377 F.3d at 231. The Second Circuit rejected that challenge, holding that "[the declarant's] statements were self-inculpatory because they described acts that [the

---

[5] If Asch does testify, the Government will elicit this information from Asch while he is on the stand.

defendant] and [the declarant] committed jointly." *Id.*   Because the declarant's statements were self-incriminating, and therefore made against his penal interest, they were admissible at the defendant's trial.   *Id.* Asch's Statement is likewise admissible because the Statement, in which he describes steps he and Van Hise took in furtherance of the conspiracy charged in Count One, is against his penal interest.   In light of the seriousness of the criminal conduct that Asch admitted participating in, there is no reason to depart from "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson* , 512 U.S. at 599.

Third, the Statement is sufficiently corroborated.   Among other things, this Court may take into account: the existence or nonexistence of "prior inconsistent statements" on the subject by the declarant, *see United States* v. *Johnson*, 121 Fed. App'x 912, 915 (2d Cir. 2005) (citing *United States* v. *Jackson*, 335 F.3d 170, 179 (2d Cir. 2003); *United States* v. *Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999); other evidence that "support[s] or contradict[s] the statement," *see United States* v. *Salvador*, 820 F.2d 558, 561 (2d Cir. 1987).   Here, the Government knows of no prior statements by Asch to the effect that he and Van Hise had never met up to discuss kidnapping or violence against women; to the contrary, Van Hise and Asch's email accounts are filled with exchanges on these topics.   Further, the circumstances of this particular exchange further bolster the trustworthiness of the Statement.   Asch and the undercover agent met, in person, to avoid being caught on a tapped phone or leaving a paper trail; throughout the conversation, each made assurances to the other about how "real" they were, and discussed their concerns about being caught by law enforcement. And then they discussed their desires to kidnap, rape, and kill women. There is no reason to question the trustworthiness of Asch's statement.   Moreover, many of the

details provided by Asch are corroborated by extrinsic evidence.   For example, Van Hise told the FBI prior to his arrest, that he had met with Asch in New Jersey, and the two discussed plans to kidnap, rape and murder women and children.   Additionally, in an email exchange between Van Hise and Asch, Van Hise (who had recently changed his user name), identified himself to Asch by saying "remember we talked and you came here and we met in the white wagon before."   All of these things provide independent corroboration to Asch's statement to the undercover.

      Additionally, the Statement is, on its face, trustworthy.   The Second Circuit once explained, in affirming a decision to permit a statement against interest:

> Further, the statements do not reflect any attempt by Prater to minimize his own culpability.   Rather, Prater implicated himself in all aspects of the robbery.   He admitted that he entered the bank, that he carried a gun, and that he went behind the counter to seize the money.   Nor was there any effort to make Matthews seem more culpable than Prater.   Prater said that Matthews had held a gun on the bank employees and patrons while Prater and the third robber went behind the counter.   In every material detail of Prater's statement, Matthews and Prater were equally culpable.   We see nothing in the contents of the statements or in the circumstances in which they were made to cause suspicion that only the portions of Prater's statements that dealt with his own actions were trustworthy.

*United States* v. *Matthews*, 20 F.3d 538, 546 (2d Cir. 1994).   Similarly, here, the Statement contains particularized guarantees of trustworthiness, insofar as: (1)  the statement is directly inculpatory of Asch (as opposed to there being simply "mere proximity" to inculpatory statements); and (2) Asch does not appear to be "minimizing his own culpability," engaging in self-aggrandizement, or falsely implicating Van Hise as a potential "fall guy."   Accordingly, the Statement should be admitted as a statement against Asch's penal interest, against both Asch and Van Hise, regardless of whether Van Hise is tried with his co-conspirators or on his own.

### b.      If Tried Together, The Defendants Will Suffer No Prejudice

The defendants here conspired together, they were indicted together, and they should be tried together.    Severing these defendants would require to the Court to conduct what is, at bottom, almost an identical trial, two and possibly three times.    The fourth superseding indictment is structured in a way that will allow the Court to provide clear, easy to follow limiting instructions about what proof the jury can consider in connection with each count.    And further, the nature of the two conspiracy counts—one of which is an undercover sting operation—will allow the jury to easily delineate what proof is admissible against each defendant and with respect to which count.    Moreover, the conduct at issue in the conspiracies charged in both Count One and Count Two is equally shocking and inflammatory—with the Conduct in Count One (in which all three defendants are charged) arguably more so, given that it involves the sexual abuse of children.    Accordingly, the defendants will suffer no "spillover" prejudice if tried together, and their motions to sever should be denied.

### 3.      The Co-Conspirator Defenses are Not Irreconcilable

For all of the reasons set forth in the Government's Opposition to Van Hise's original motion to sever, the Government submits that irreconcilable defenses is not a basis for severance here.    At bottom, Meltz and Van Hise each claim that, when the time came, they would have called the police and never let their co-conspirators go through with actually abducting, raping, and killing either Van Hise's family members or the targeted victim from the Count Two conspiracy.    With respect to Asch, he claims that this was all a fantasy (including the purchase of a taser gun).    Believing one defendant's defense does not require the conviction of the others. *See United States v. Pellon*, 475 F. Supp. 467, 482 (S.D.N.Y. 1979), *aff'd without opinion*, 620

F.2d 286 (2d Cir. 1980) (denying severance based on a claim of irreconcilable defenses where one

co-defendant intended to admit certain conduct but deny the criminal intent necessary for guilt

while others intended to argue that they were operating as undercover government agents).   Thus,

as the Government previously submitted, and consistent with the Second Circuit's guidance,

severance on this basis should be denied:   ". . . an adversarial stance by a co-defendant clearly

does not, alone, require trials to be severed.   Were this true, a virtual ban on multi-defendant

conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses."

*United States v. Cardascia*, 951 F.2d 474, 484-85 (2d Cir. 1991) (internal quotation marks and

citations omitted).

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss Count One of the Fourth

Superseding Indictment and for severance should be denied.


Dated:  New York, New York
        November 5, 2013



                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America


                            By:   _____

                                        Brooke E. Cucinella
                                        Hadassa Waxman
                                        Assistant United States Attorneys
                                        Tel.:   (212) 637-2477/2277