UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA,                :

       - v -                                              :         12 Cr. 847 (PGG)

GILBERTO VALLE,                                  :

               Defendant.         :

------------------------------------------------------X


# SENTENCING MEMORANDUM


DAVID E. PATTON, ESQ.
Federal Defenders of New York, Inc.
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

Attorney for Defendant
**Gilberto Valle**


**JULIA L. GATTO,**
Of Counsel


TO:  **PREET BHARARA, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007

       Attn.:  **HADASSA WAXMAN, ESQ.**
               **RANDALL JACKSON, ESQ.**
               Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

---

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

October 21, 2014

**Via Hand Delivery and ECF**

The Honorable Paul G. Gardephe
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

    Re:    **United States v. Gilberto Valle**, 12 CR 847

Dear Judge Gardephe:

    We respectfully write in advance of Mr. Valle's November 4, 2014 sentencing on Count Two—the misdemeanor offense of illegally accessing a federal database, in violation of 18 U.S.C. § 1030(a)(2)(B). The offense carries a maximum term of imprisonment of one year and a maximum term of supervised release of one year. 18 U.S.C. §§ 1030(a)(2)(B), 1030(c)(2)(A), and 3583(b)(3). The advisory guidelines recommend a range of imprisonment, in Zone A of the sentencing table, of zero to six months.

    Mr. Valle already has served far in excess of the Guidelines' recommendation and the statutory maximum term of imprisonment. He spent 21 months in jail, 7 of them in solitary confinement. Mr. Valle does not oppose a one-year period of supervision with limited, reasonable conditions appropriate to promote his reintegration into the community. Thus, we ask that the Court impose the maximum sentence of 12 months of imprisonment and one year of supervised release.

    The Court should remove the other restrictions on Mr. Valle's liberty that currently exist, including the strict condition of home confinement imposed when Mr. Valle was released from prison four months ago. As discussed below, such conditions, which were imposed at the government's request pending its appeal on Count One, are both legally improper and factually inappropriate.

The Honorable Paul G. Gardephe
October 21, 2014
Page 2 of 7

## Background

Before his arrest in the fall of 2012 and the unwelcome notoriety that came with it, Gilberto Valle was a typical 28-year-old living in New York City. He had a promising and fulfilling career as a New York City police officer, and was about to be promoted to the rank of sergeant. He was in a new marriage and was adjusting to fatherhood with his one-year-old baby girl, Josephine, whom he loved dearly. He shared a close relationship with his parents, his brother Daniel, and his step-brother Joseph. He had friends and a social life.

In the attached letters of support from Gil's family and community, Exhibits A-N, he is repeatedly described as a "peaceful," "smart," and "respectful" young man who had three simple but great loves in his life—baseball, his job, and his family.

Gil's quiet life dramatically changed on October 24, 2012, when he was arrested. Following his arrest, Gil's name and picture were splashed on every New York City tabloid beneath the caption "Cannibal Cop." Gil, however, was not the monster the papers made him out to be. Gil undeniably had monstrous thoughts plagued by dark, twisted fantasies of sexualized violence against women. But he never did, and never would, act on his thoughts. Gil's fantasy life, explored through late-night internet chats only, remained firmly in the realm of fantasy.

Nearly two years after Gil was arrested and after 21 months in jail, this Court acquitted Gil of Count One of the Indictment in which he was charged with conspiracy to kidnap. The Court not only found the evidence insufficient, but also cited its "real concern" that Mr. Valle is innocent. *United States v. Valle*, --- F.R.D. ---, No. 12-cr-847 (PGG), 2014 WL 2980256, at *52 (S.D.N.Y. June 30, 2014). The Court declared, "It is more likely than not the case that all of Mr. Valle's Internet communications about kidnapping are fantasy role-play." *Id.*

The Court sustained the conviction for the misdemeanor offense of Count Two—a charge wholly independent of the conduct charged in Count One. The evidence on Count Two was limited to one instance, on May 31, 2012, when Mr. Valle accessed an NYPD computer from his patrol car and queried the name Maureen Hartigan. Ms. Hartigan and Gil had been friends since high school—about 12½ years. Tr. 358. On account of his long friendship with Ms. Hartigan, when Gil queried her name in May

The Honorable Paul G. Gardephe
October 21, 2014
Page 3 of 7

2012, he already knew all the personal identifying information returned by the search, including her birthday and home address.[1] Tr. 359-60, 366.

  The government has intimated that Gil queried Ms. Hartigan's name as part of some fiendish plot. But that is demonstrably false: as evidenced at trial, Gil queried his own name and his brother's name as well; he clearly was not plotting to kidnap himself or his brother. He also queried his wife's name, even though he already knew everything about her. Accordingly, Gil's motivation for these computer searches was not to kidnap anyone.

  Of course, unlike most of us, Gil was a police officer when he ran Ms. Hartigan's name. And, in his earliest days on the force, Gil had been trained not to use his patrol car computer for any purpose other than for law enforcement. Tr. 941. He, like all police officers, had been warned that misuse of the NYPD computer system could subject him to criminal penalties. Tr. 942, 950. In reality, while many police officers are disciplined for the infraction, few—if any—are charged with a crime. A defense source at the NYPD compiled a sampling of the disciplinary records and punishments for officers found to have misused the NYPD computer systems in 2010 and 2011, a copy of which is attached hereto as Exhibit O. As confirmed by the document, the internal NYPD punishments for the offense are relatively minor. Unauthorized access by a police officer of the NYPD computer systems is typically punished with the forfeiture of vacation days. For example, an officer who "made inquiries in department computers which were not related to official business of the department," was disciplined only with the forfeiture of 15 vacation days. Exhibit O. An officer who pleaded guilty to three infractions, including unauthorized computer inquiries, forfeited 20 vacation days. *Id.* Another officer who "wrongfully utilized [a] department computer" and accidentally discharged his firearm lost only 35 vacation days. *Id.* And yet another officer who "wrongfully utilized [a] department computer" and "engaged in a physical altercation" lost 30 days. *Id.*

  Gil has lost far more than vacation days. He has lost nearly everything. He lost his job. He lost his liberty for 21 months. He lost his wife and his child. He lost many of his friends. He lost his reputation and anonymity.

  Gil wants to recover from this dark chapter and to positively evolve from it. Gil can do it. While in prison, instead of buckling under a stress that would defeat most people, Gil pushed forward. He spent his first seven months in jail in solitary confinement for his own protection. During that time, he was an integral member of the defense team. He pored over the discovery and educated himself on the relevant law.

---

[1] Gil did not chat about Ms. Hartigan with "Moody Blues," Michael VanHise, or "Aly Khan" in any of the internet communications that were introduced at trial in connection with Count One.

The Honorable Paul G. Gardephe
October 21, 2014
Page 4 of 7

After he was transferred to the general prison population, he remained productive. He earned two work details. He started in the kitchen as an orderly and then was promoted to a cook. He also worked as a counselor to inmates housed in the suicide prevention unit. Before his imprisonment, Gil had spent his career locking up the people whose hands he now held in their darkest moments. Our concerns for Gil's safety in general population were completely unfounded. Today, even after his release, he remains friends with many of the inmates he met while he was housed at the MCC.

      Since his release, Gil continues to use his time constructively. Although Gil committed no crime by chatting on the internet, he now recognizes that the substance of his chats are deeply troubling and disturbing. Gil wants help. To that end, since his release, he has met weekly with a counselor approved by Pretrial Services, Peter Turco, L.C.S.W. Gil has connected with Mr. Turco and finds their sessions productive. Gil hopes to continue with Mr. Turco while on supervised release. Before his arrest, Gil never disclosed his interest in fetish fantasies to anyone, not even to sexual partners or his wife. Today, he speaks freely with Mr. Turco in an effort to understand his behavior and move beyond it. Although having his sexual fantasies revealed in the public forum of this prosecution has been devastatingly embarrassing for Gil, there also is a sense of relief and liberation in being able to confront and overcome them.

      Gil does not want his life's legacy to be the story of the "Cannibal Cop." He is only 30 years old and intends to make something more out of his life. Inspired by the team of people who defended his innocence, Gil wants to go to law school. While in prison, he asked his family to send him LSAT prep books, and he continues to study for the exam since his release. He has scored as high as the 80th percentile on his most recent practice tests. Luckily, Gil is surrounded by a core group of people who love and support him. They will further ensure that Gil moves forward and in the right direction

## Sentencing

      Mr. Valle stands before the Court for sentencing on a misdemeanor—accessing a federal database improperly. He already has served far in excess of the statutory maximum term of imprisonment for that crime. Even without regard to the statutory maximum, there should be little question that Mr. Valle needs no further punishment for the misdemeanor offense considering the harsh conditions of his imprisonment, including seven months in solitary confinement, and the collateral consequences of this prosecution on his life.

      The only question, therefore, is the length of any supervised release term and the appropriate conditions of supervision. Mr. Valle is not opposed to the statutory maximum

The Honorable Paul G. Gardephe
October 21, 2014
Page 5 of 7

term of supervised release of one year with credit for the four months he has already spent on house arrest awaiting sentencing. He also welcomes and specifically requests a condition of mandated and appropriate mental health treatment. Without objection, the Court should impose all the mandatory and standard conditions of supervised release.

But the Court should remove all other restrictions on Mr. Valle's liberty pending the government's appeal on Count One, including the current condition of house arrest.

As a legal matter, once sentence is imposed on Count Two, the Court will no longer have the constitutional or statutory authority to restrict Mr. Valle's liberty pending the government's appeal on Count One. Because the government's appeal is being taken pursuant to 18 U.S.C. § 3731, the Bail Reform Act, 18 U.S.C. § 3143(c), requires the Court to "treat [the] defendant . . . in accordance with section 3142" of title 18 during the appeal's pendency. 18 U.S.C. § 3143(c). Section 3142(a), however, only authorizes the detention "of a person *charged with an offense*." 18 U.S.C. § 3142(a) (emphasis added). As of June 30, 2014, the date Mr. Valle was acquitted by this Court, he no longer fit that description as to Count One because he was no longer "charged with" the offense of conspiracy to kidnap. And once he is sentenced on Count Two, he will not be "charged with" *any* offense. Accordingly, upon sentencing, the Court will no longer have authority to restrict Mr. Valle's liberty pending the government's appeal. *See, e.g., United States v. Sales,* No. 2:13-cr-00137-NT, 2014 WL 3728364, at *3-*5 (D. Maine July 25, 2014) (holding that 18 U.S.C. § 3142 "does not allow the Government to detain an individual who is not 'charged with an offense,'" and that the defendant was no longer "charged with an offense" after the court dismissed the indictment against him); *United States v. Hudson,* 3 F. Supp. 3d 772, 790 (C.D. Cal. 2014) ("It would run completely afoul of the Constitution for the Court to simply order that a person sit in jail because at some unknown point in the future an appellate court might reverse the court order that dropped the charges against him."); *United States v. Shavanaux,* No. 2:10 CR 234 TC, 2010 WL 4608317, at *1-*2 (D. Utah Nov. 5, 2010) (dismissal of indictment by trial court constituted "a judicial determination . . . that there is currently no offense charged" and precluded detention during pendency of government appeal).[2]

---

[2] As the *Sales* court noted, *see Sales,* 2014 WL 3728364, at *4 n.6, a magistrate judge once suggested in dicta that "[t]he Bail Reform Act permits a defendant to be detained pending an appeal by the government of the dismissal of an indictment." *United States v. Ailemen,* 165 F.R.D. 571, 597 n.33 (N.D. Cal. 1996). But *Ailemen*'s facts were both distinguishable and highly unusual. There, not all of the charges against the defendant had been dismissed, *see id.* at 572-73 (noting the dismissal of all the counts "except one"). Accordingly, in *Ailemen* the defendant was still "charged with an offense" while the government's appeal was pending—quite unlike Mr. Valle, who has been acquitted and who, upon sentencing, will have no pending charge against him. Both *Sales* and *Hudson* have persuasively concluded that *Ailemen*'s dicta does not apply in a situation like Mr. Valle's.

The Honorable Paul G. Gardephe
October 21, 2014
Page 6 of 7

In any event, even if the text of Section 3142(a) and the Constitution permitted the Court to impose house arrest and other severe restrictions on Mr. Valle's liberty pending the government's appeal, analysis under Section 3142(g) would not warrant those restrictions in this particular case. Section 3142(g)(3) requires the Court to consider the defendant's "history and characteristics," and Section 3142(g)(4) requires the Court to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(3)-(4). Mr. Valle has no prior criminal record, no history of violence, and, according to Dr. Park Dietz, he poses no danger. See Declaration of Park Dietz, M.D., M.P.H., Ph.D., Valle, No. 12-cr-847 (PGG) (S.D.N.Y. filed June 17, 2013), ECF No. 181.

Nor is Mr. Valle a risk of flight. He has strong ties to the community, he has surrendered all of his travel documents, and he has abided by all the conditions placed upon him by the Court since his release in July. Now that he has been acquitted, he has no reason to flee. Further, the one-year term of supervision on Count Two, to which Mr. Valle does not object, including travel restrictions, adequately addresses any concern that Mr. Valle would abscond pending the government's appeal.[3]

The Court must also weigh the nature and circumstances of the offense charged, 18 U.S.C. § 3142(g)(1), and the weight of the evidence supporting the charge, 18 U.S.C. § 3142(g)(2). With respect to Section 3142(g)(1), Mr. Valle is no longer charged with an offense. With respect to Section 3142(g)(2), the Court has already concluded that the evidence against Mr. Valle is insufficient to support a conviction on Count One, and that he is probably innocent. Accordingly, the government has not met its burden of demonstrating that bail conditions are warranted, even if a Section 3142(g) analysis were appropriate.

Strict release conditions are also unnecessary as a component of the sentence on Count Two. As explained above, Mr. Valle has been punished beyond the statutory maximum penalty for the offense of conviction. His conduct in accessing a database without authorization certainly does not pose any public safety concerns that could justify house arrest or other harsh restrictions on his liberty. Nor does a danger of recidivism

---

Moreover, the Ailemen court explained that, because of an intervening Ninth Circuit decision, the dismissed charges were likely to be reinstated on appeal, and that the evidence supporting those charges was "fairly strong." Id. at 575, 597 n.33. Here, the government has not identified any error committed by this Court in its decision acquitting Mr. Valle, much less shown a likelihood of success on appeal. And, as this Court has recognized, the evidence against Valle on Count One is not only weak, but legally insufficient.

[3] It remains unclear whether the government will follow through with its appeal. Although it has filed a protective notice of appeal, the government has not yet indicated that it has received the required permission from the Solicitor General's office to pursue the appeal.

exist: Mr. Valle was fired from his job as a police officer and no longer has access to sensitive law enforcement information.

Finally, the allegations behind Count One—for which Mr. Valle has been acquitted—do not justify any restrictions on his liberty. He never took any steps to act on his imaginary internet scenarios. He is committed to therapy to explore his dark fantasies and to ensure that they do not interfere with his or anyone else's life again. To accomplish that, in addition to therapy, he needs to transition back into society. He needs to obtain employment, further his schooling, develop new relationships, reconnect with family and friends, and live independently. He needs to move past the label of "Cannibal Cop" and get his life in order. He cannot do any of these things effectively while imprisoned indefinitely in his mother's home.

## Conclusion

For the foregoing reasons, the Court should impose a sentence of 12 months' imprisonment and a one-year term of supervised release with appropriate conditions to facilitate Mr. Valle's transition from prison to the community, including mental health treatment. The Court should remove all other restrictions on his liberty.

Respectfully submitted,

Julia L. Gatto
Robert M. Baum
Edward S. Zas
Assistant Federal Defenders
(212) 417-8700

cc:   AUSAs Hadassa Waxman/Randall Jackson (via hand delivery and ECF)